UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICK DAVIS, SR., MATHEW KOOHNS, and
BRETT A. LOCKHART, SR., individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

UNITED HEALTH GROUP
INCORPORATED, UNITEDHEALTHCARE
INSURANCE COMPANY,
UNITEDHEALTHCARE OF WASHINGTON,
INC., and UNITED HEALTHCARE
SERVICES, INC.,

Defendants.

Case No. 2:21-cv-01220

**CLASS ACTION COMPLAINT**

Plaintiffs Rick Davis, Sr. ("Davis"), Mathew Koohns ("Koohns"), and Brett A. Lockhart,

Sr. ("Lockhart," and together with Davis and Koohns, "Plaintiffs"), individually and on behalf of

all others similarly situated, bring the following complaint against Defendants United Health

Group Incorporated, UnitedHealthcare Insurance Company, UnitedHealthcare of Washington,

Inc., and UnitedHealthcare Services, Inc. (collectively, "United"), as follows:

## **INTRODUCTION**

1.       United is in the business of administering health plans, many of which are

governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*.

("ERISA").

CLASS ACTION COMPLAINT – 1
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

2.      United fails to reimburse claims for health care benefits provided by "out-of-network" providers according to the payment terms of the written ERISA plan. In particular, United improperly bypasses the requirement of certain plans that United first determine the allowed amount of benefits according to any contract that the provider might have with United or a vendor, affiliate, or subcontractor of United. By bypassing this first reimbursement provision, United causes the plans it administers to pay less in benefits for covered healthcare services than the plans require. United's conduct violates the written plan terms and ERISA, including United's fiduciary duties under ERISA.

3.      The ERISA plans that United administers are either "self-funded," meaning that the employer plan sponsor pays benefit claims from its own assets, or "fully insured," meaning that United pays benefit claims from its own assets in exchange for a premium payment made by the employer and/or its employees.

4.      Most of the ERISA plans United administers cover health care services received by insureds from either in-network ("INET") providers, who have entered into contracts with United to provide services at negotiated rates, or out-of-network ("ONET") providers, who are not contracted to be part of United's "network."

5.      Each ERISA plan United administers has a provision that specifies how benefit amounts will be determined. Those provisions all utilize the concept of "Eligible Expenses" (sometimes called "Eligible Charges," "Allowed Amount," or other comparable term), which is defined to mean the portion of a bill that will be "allowed" for purposes of calculating the benefits that the plan will pay for a particular service. The amount of the bill in excess of the allowed amount is deemed to be "not covered" under the applicable United plan.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

6.      For INET services, the plans define Eligible Expenses to mean the rates that the INET provider agreed to accept pursuant to its contract with United. The member is then only financially responsible for deductibles, copayments, and coinsurance, tied to the discounted INET rates.

7.      For ONET services, many of the United plans require that, to set the Eligible Expenses, United must first determine if the ONET provider has entered into an agreement with United or one of its "vendors, affiliates or subcontractors" ("vendors") to accept a discounted, negotiated rate as payment in full for the service. United plans with such a provision are referred to herein as "Vendor Contract Plans." If the ONET provider has entered into such a contract, United must use those negotiated rates as the Eligible Expenses. United members who obtain care from such ONET providers benefit substantially because their financial responsibility will be limited to the deductible, copayment, and coinsurance amounts based on the discounted negotiated fee.

8.      Only if the ONET provider has not agreed to a negotiated rate with United or one of its vendors does the Vendor Contract Plan allow United to turn to a secondary, alternate methodology (often based on Medicare rates) to determine Eligible Expenses.

9.      United has a variety of vendors that have executed contracts with ONET providers. These agreements entitle the provider to reimbursement based on the vendor contract rate (which is often a specified percentage of billed charges) in exchange for the provider's agreement not to bill the patient the difference between the amount allowed by the contract and the full billed charge. Among United's vendors are MultiPlan, Inc. ("MultiPlan") and Preferred Medical Claims Solutions ("PMCS").

CLASS ACTION COMPLAINT – 3
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

10.     In direct contravention of the written plan terms defining Eligible Expenses, as well as United's fiduciary duties (including, but not limited to, the duty of loyalty to exercise its discretion in a manner that advances the interests of plan members like Plaintiffs), United frequently refuses to cause Vendor Contract Plans to pay the rates set forth in contracts that its vendors have executed with ONET providers. Instead, United causes such plans to pay lower rates for ONET services, using alternate methodologies such as Medicare rates.

11.     For Davis, United recognized that his treating ONET provider was a party to a contract with PMCS, a United vendor, and applied the terms of the PMCS contract in calculating the ONET benefits for two office visits. Yet, United then ignored the PMCS contract when processing claims for back injection and a back surgery, using Medicare rates instead. For Koohns, United determined Eligible Expenses using Medicare rates instead of the vendor contracts to which his ONET providers were parties. Medicare rates are different from the MultiPlan ONET agreement in place with his providers, and far below the rate in that Multiplan agreement. For Lockhart, United determined Eligible Expenses using an amount calculated by Data iSight, a company that United hires to price ONET claims. Data iSight calculated an amount using its own Medicare-based methodology which was contrary to and far below the rate provided for under the MultiPlan ONET agreement in place with Lockhart's provider. Regardless of which alternative methodology is used by United, it not only violates written plan terms requiring use of negotiated rate agreements when they are available, but also elevates United's own interests and those of its plan sponsor employer customers above the interests of plan participants and beneficiaries.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

## THE PARTIES

12.    Plaintiff Davis is a resident of Snohomish, Washington. He is insured under a self-funded health benefit plan, the Target Corporation Employee Umbrella Welfare Benefit Plan (the "Target Plan"), issued through his wife's employer, the Target Corporation ("Target Plan"). The Target Plan provides that it is administered by Defendant United HealthCare Services, Inc. ("UHS"), and specifies that Target "has delegated to UnitedHealthcare the discretion and authority to decide whether a treatment or supply is a Covered Service and how the Eligible Expenses will be determined and otherwise covered under the Plan."

13.    Plaintiff Koohns is a resident of Puyallup, Washington. He is insured under a fully insured health care benefit plan, the Miles Sand & Gravel Welfare Benefit Plan ("MS&G Plan"), issued through his employer, Miles Sand & Gravel ("MS&G"), which is headquartered in Puyallup, Washington. The MS&G Plan is underwritten (i.e., insured) by UnitedHealthcare of Washington, Inc. ("UHC Washington"). Pursuant to this fully insured plan, United pays all covered medical expenses through its own assets and serves as the plan's claims administrator and fiduciary.

14.    Plaintiff Lockhart is a resident of Cocoa, Florida. He is insured under a self-funded health care benefit plan, the Jacobs Engineering Group Inc. Medical Plan (the "Jacobs Plan"). Lockhart is a participant in the Jacobs Plan through his employer, the Jacobs Engineering Group Inc. ("Jacobs"). Jacobs hired defendant UHS to serve as the plan's claims administrator. As with Target under the Targe Plan, Jacobs "has delegated to UnitedHealthcare the discretion and authority to decide whether a treatment or supply is a Covered Service and how the Eligible Expenses will be determined and otherwise covered under the Plan."

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

15.     Defendant UHC Washington is a Washington corporation with its principal offices at 1111 Third Avenue, Suite 1100, Seattle, WA, 98101. UHC Washington, which was established in the State of Washington to deal with Washington-based United plans, is the underwriter (insurer) of the MS&G Plan, which insures Plaintiff Koohns. UHC Washington is a wholly owned subsidiary of Defendant UnitedHealth Group Incorporated ("UHG").

16.     Defendant UHG is a diversified health care company, with two primary complementary businesses which operate under the names Optum and UnitedHealthcare. Optum is an information and technology-enabled health services business, while UnitedHealthcare offers a full spectrum of health benefit programs. In addition to offering services through INET providers, UnitedHealthcare provides coverage under most of its plans for services provided by ONET providers. UnitedHealthcare plans provide health care coverage to 26.2 million people in all 50 states.

17.     Either directly or through its wholly owned and controlled business units and subsidiaries, UHG issues and administers health benefit plans and is delegated responsibility to make benefit determinations pursuant to those plans, including the MS&G, Target, and Jacobs Plans. As such, UHG is a fiduciary under ERISA with regard to its benefit determinations at issue in this litigation.

18.     Defendant United HealthCare Insurance Company ("UHIC") is a wholly owned and controlled subsidiary of Defendant United Healthcare Services, Inc. ("UHS"). UHIC is also the designated "Claims Fiduciary" under the MS&G Plan which made the coverage decisions at issue in this case with respect to Koohns. In addition, using the address of UHG, UHIC issued the "Electronic Provider Remittance Advice" to the ONET provider that performed the services at issue in this case with respect to Lockhart, detailing how the claim was processed and the amount

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

that was paid to the provider on Lockhart's behalf. Moreover, UHIC is the UnitedHealthcare entity that handles appeals of benefit denials. In particular, both the first and second level appeal denial letters relating to Lockhart's claim, described below, were issued by UHIC. In processing benefit claims and making the internal appeal decisions, UHIC is an ERISA fiduciary.

19.     Defendant UHS is a wholly owned and controlled subsidiary of UHG. UHS is the formally designated "Claim Administrator" to both the Target Plan and Jacobs Plan, with its delegated role to make coverage and benefit determinations. As such, UHS is an ERISA fiduciary.

20.     Defendants are referred to collectively in this Complaint as "United."

## JURISDICTION AND VENUE

21.     Subject-matter jurisdiction is appropriate over Plaintiff's claims under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

22.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (c)(2). United issues and administers various ERISA health benefit plans in this District, including the MS&G Plan for Koohns, and makes coverage and benefits decisions for insureds who reside in this District, including Davis and Koohns.

23.     The litigation is properly filed in the Western District of Washington at Seattle because Plaintiff Davis' claim arose in Snohomish County, Washington; one of the defendants, UnitedHealthcare of Washington, has it principal place of business in Seattle; all defendants conduct business in King County, Washington; and a substantial part of the events or omissions giving rise to the claims, including the health care services obtained by Plaintiffs Davis and Koohns, occurred in King and Snohomish Counties.

CLASS ACTION COMPLAINT – 7
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

# FACTUAL ALLEGATIONS

## Plaintiff Davis

### The Target Plan

24.     Davis is insured under the Target Plan, which is a self-funded plan governed by ERISA. The Target Plan documents specify that it is a Choice Plus HRA which is "administered by United HealthCare Services, Inc."

25.     The written terms of the Target Plan explain that "Target Corporation has delegated to UnitedHealthcare the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the Plan."

26.     The written terms of the Target Plan also describe how Eligible Expenses are calculated, stating:

**For Network Benefits.** Eligible Expenses are based on the following:

- When Covered Health Services are received from a Network provider, Eligible Expenses are UnitedHealthcare's contracted fee(s) with that provider. . . .

**For Non-Network Benefits,** Eligible Expenses are based on either of the following:

- When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

  ❖ Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.

  ❖ If rates have not been negotiated, then one of the following amounts:

    ▪ Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Medicaid Services (CMS) for the same or similar service within the geographic area . . .

27.      This plan provision requires United to first look to any agreements the ONET provider has with United or one of its vendors, and apply the negotiated rates from any such agreement to set Eligible Expenses. The bullets under the "**For Non-Network Benefits**" section are articulated with an "if, then…" premise, identifying that ***only in the absence of such an agreement*** is United able to turn to the alternate methodologies, such as Medicare rates.

28.      The Target Plan is a Vendor Contract Plan that requires use of negotiated rates with United vendors to set the allowed amount for ONET services, with the alternative methodologies used only if rates have not been negotiated.

### Dr. Schwaegler's and SSI's Multiplan and PMCS Contracts

29.      Davis received care for his back pain from Dr. Paul E. Schwaegler and Jeffery Fernandez, PA, a physician assistant who provided surgical assistant services for Dr. Schwaegler along with other services, at Seattle Spine Institute PLLC ("SSI"), located in downtown Seattle. . .

30.      At the time Davis received those services, Dr. Schwaegler and SSI – who were ONET providers with respect to United – were parties to a negotiated fee contract with Multiplan, pursuant to which the parties agreed to negotiated rates for services provided to patients insured under plans for which MultiPlan served as a vendor. At this same time, Dr. Schwaegler and SSI were also contracted with another United vendor, PMCS.

31.      SSI and Dr. Schwaegler entered into an initial contract with MultiPlan dated February 27, 2014. It provides as follows:

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

**Seattle Spine Institute PLLC** (Provider) agrees to accept payment-in-full for all non-network claims/bills submitted to benefit programs issued or administered by clients of MultiPlan (including its subsidiaries Viant and NCN) as follows:

> 10% off Billed Charges
>
> * * * *

- . . . You retain the right to bill the patient (or other financially responsible party) for items not covered under the patient's benefit plan and for amounts such as deductibles, coinsurance, or co-payments, whenever applicable.

- By accepting this agreement, you represent that you are authorized to act on behalf of all physicians using the same TIN, and this agreement will apply to all such physicians.

Dr. Schwaegler was a party to this contract along with SSI, as he was one of the providers using the same Federal Tax Identification Number ("TIN") as SSI, such that the agreement applied to his bills as well.

32.     On October 26, 2017, SSI entered into a United-specific agreement with MultiPlan. It states as follows:

**Seattle Spine Institute PLLC** (Provider) agrees to accept payment-in-full for eligible claims/bills for benefit programs issued, administered or serviced by UnitedHealthcare, on behalf of itself and its ASO customers and affiliate payors, a client of MultiPlan (Payor), that are submitted by Client to MultiPlan and eligible for such services as follows:

30% off of Eligible Charges

- By accepting this Global Amount, Provider agrees not to bill patients (or other financially responsible parties) for the difference between Billed Charges and the Global Amount.

* * * *

33.     SSI, along with its providers, including Dr. Schwaegler and Mr. Fernandez, also had a contract with PMCS, another United vendor.

CLASS ACTION COMPLAINT – 10
[Case No. 2:21-cv-01220]

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

34.     Pursuant to the terms and conditions of the PMCS contract that was in place at the time of the health care services received by Davis, SSI, and its providers agreed to accept a 10% discount on all claims submitted to PMCS clients. This amount would therefore be accepted by SSI and its providers as payment in full for their services.

**Davis's Office Visit Claims**

35.     On November 5, 2019, Davis was examined during an office visit with Mr. Fernandez, for which Mr. Fernandez billed $152.40 in a claim submitted on Davis's behalf to United.

36.     In an Explanation of Benefits ("EOB") issued to Davis by Defendant UHS dated December 12, 2019, United processed the claim by applying a $15.24 "plan discount," leaving the "Allowed Amount" as $137.16 for the service. This entire amount was then applied to the deductible that was owed by Davis.

37.     In explaining how it processed the claim, United used note 4E, which states: "This out-of-network provider has accepted a discount for this service based on an agreement with PMCS."

38.     Davis also saw Mr. Fernandez for an office visit on December 5, 2019, for which Mr. Fernandez billed $102.60. In an EOB dated January 10, 2020, United again applied the PMCS contract (using not 4E), such that it discounted 10% off of the billed charge, or $10.26, leaving $92.34 as the Allowed Amount. Once more, this entire amount was applied to Davis's deductible, leaving him responsible for that amount.

39.     As reflected in both of the office visit EOBs, United applied the PMCS contract that had been entered into by SSI, on behalf of itself, Dr. Schwaegler, and Mr. Fernandez, by

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

taking 10% of the billed charges. These EOBs therefore confirmed that United recognizes PMCS as one of its vendors.

**Davis's Injection Claims**

40.    On May 27, 2020, Davis received a surgical procedure from Dr. Schwaegler at SSI, in which he received certain injections to address his back pain. For these services, Dr. Schwaegler billed a total of $2,496.00. In an EOB dated July 24, 2020, issued by Defendant UHS, United reported no "plan discounts," but only reported $646.93 as the "Allowed Amount." The remaining $1,849.97 was reported as "non-covered," with full Allowed Amount of $646.03 applied toward Davis's deductible. The EOB then reflected that the entire $2,496.00 was the amounted owed by Davis.

41.    For that same injection service, SSI also billed $2,981.00 in facility fees for the "outpatient services." In an EOB dated July 24, 2020 issued by Defendant UHS, United again reported nothing for "plan discounts" and identified the "Allowed Amount" as $490.13, with the remaining $2,490.87 identified as "non-covered." With the full $490.13 applied to Davis's deductible, the entire bill of $2,981.00 was identified as the amount owed by Davis.

42.    In both July 24, 2020 EOBs, United explained how it processed the claim by using note "ND," which states: "This out-of-network service was paid based on Medicare allowed amounts or other sources if no Medicare amount is available. These amounts are used even if the patient doesn't have Medicare." Thus, in direct contrast to what it did with the office visit claims by Mr. Fernandez, United ignored the PMCS contract and, in violation of the Target Plan terms, used the alternative Medicare methodology. This was despite the fact that, under the Target Plan, the Medicare methodology is only to be used in the absence of a rate agreement between the ONET provider and a United vendor.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

43.     Had United applied the PMCS contract to set the Eligible Expenses for Davis's injection services as the Target Plan required, United would have deducted only $249.60 from Dr. Schwaegler's billed charges of $2,496.00, and $298.10 from SSI's billed charges of $2,981.00. This would have set the Allowed Amounts as $2,246.20 and $2,682.90, respectively, for a total of $4,929.10, rather than the $1,137.06 set based on the Medicare rates, or an additional $3,792.04. The individual ONET deductible for Davis under the Target Plan was $2,250. That means that had United processed the claim properly, the entire deductible amount would have been satisfied, leaving, at a minimum, more than $1,500 to be paid by the Plan. But as a result of United's violation of the plan terms, that amount that was not paid, and was left as Davis's responsibility.

44.     Davis appealed how United misprocessed his injection claims by letter dated March 29, 2021, explicitly citing the charges by both SSI and Dr. Schwaegler for the injection services he had received, and stating:

> I am writing to appeal the allowed amounts for each claim as I believe they are incorrectly determined based on Medicare rates. The incorrect processing has left me financially responsible for over $5,000! My appeal request is that United Healthcare reprocess these claims based on my Plan's non-network negotiated rate benefit. Such corrected processing will leave me responsible for deductible and coinsurance amounts only, consistent with my Plan benefits.

45.     In the appeal letter, Davis identified the services he had received from SSI, Dr. Schwaegler, and Mr. Fernandez, and quoted the specific language from the Target Plan that required using any existing negotiated rate agreements with United vendors as the basis for setting Eligible Expenses. After pointing out that the health care providers were part of SSI he added: "United Healthcare *does* have a negotiated rate agreement with Seattle Spine Institute through Preferred Medical Claim Solutions (PMCS), a vendor of United Healthcare. **My previous care**

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

**with Seattle Spine Institute was processed via the PMCS negotiated rate agreement.**"

(Emphasis in original, citing the office visit claims.)

46.    Davis included copies of the EOBs, marked up to show how United had improperly applied Medicare rates for the injections by SSI and Dr. Schwaegler, and stated:

> My claims for 5/27/2020 have *not* been processed using the available PMCS negotiated rate agreement. Instead, they have been processed using a <u>Medicare</u> method – a method that is supposed to be used only in the *absence* of a negotiated rate agreement. Please reference my marked-up Explanation of Benefits reproductions below identifying this incorrect processing.
>
>                              * * * *
>
> . . . I request Eligible Expenses be based on the Seattle Spine Institute negotiated rate available to United Healthcare through PMCS. Again, my previous care provided by Seattle Spine Institute has already been processed using the Seattle Spine Institute/PMCS agreement.

47.    By letter dated April 26, 2021, under "UnitedHealthcare" letterhead out of Salt Lake City, Utah, United responded to the Davis appeal. Referring solely to the SSI claim, and not mentioning the claim for Dr. Schwaegler's services, United stated that "it has been determined that the request for payment was processed correctly."

48.    United quoted at length from the Target Plan, including how the Eligible Expenses should be calculated first based on any "negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion," and then, "[i]f rates have not been negotiated," then United would use 110% of Medicare rates. United did not provide any analysis of this language, or explain why it did not apply to require United to use SSI's PMCS negotiated rate agreement. Instead, United ignored it, stating: "Because the claim(s) for the service(s) was processed according to the above provisions, the original determination remains unchanged and is upheld." That conclusion was

CLASS ACTION COMPLAINT – 14
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

wrong, however, because it failed to follow the explicit requirements of the Target Plan with regard to the application of SSI's vendor contract.

49.     The letter added that "[i]f you are not satisfied with this decision, you or your authorized representative may request a second level review." The letter did not disclose to Davis that this second level review was mandatory prior to bringing a lawsuit to enforce the Plan terms under ERISA, nor did the letter mention litigation as an option available to Davis.

50.     By letter dated June 20, 2021, Davis filed a second level appeal relating to the injection claims submitted by Dr. Schwaegler and SSI, specifically noting that it was in response to United's denial letter dated April 26, 2021.

51.     In this letter, Davis again included the Target Plan language regarding United's requirement to use any existing negotiated rate agreement between SSI and a United vendor, highlighting the key provisions. He stated:

**Seattle Spine Institute and PMCS:**
Seattle Spine Institute does have a negotiated rate agreement with Preferred Medical Claim Solutions (PMCS). United Healthcare is aware of this agreement and PMCS is considered one of United Healthcare's vendors, affiliates or subcontractors because previous care provided to me by Seattle Spine Institute has been processed using their PMCS agreement.

**Summary:**
In summary, UnitedHealthcare is responsible for processing my claims consistent with my benefits. My benefit language disallows use of a processing method other than the negotiated rate agreement method when such an agreement exists. Per above, a negotiated rate agreement does exist, and United Healthcare is aware of it as they have already used it to process previous claims from the same provider.

**Request:**
My appeal request is simple and straightforward: **I request my claims be reprocessed using my Non-Network negotiated rate benefits.** Specifically, I request Eligible Expenses be based on the Seattle Spine Institute negotiated rate available to United Healthcare through PMCS.

CLASS ACTION COMPLAINT – 15
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

52.     The only additional correspondence received by Davis from United was a July 11, 2021 letter addressed to Dr. Schwaegler, with a copy going to Davis. In the letter, United thanked Dr. Schwaegler for his correspondence relating to Davis, but stated that it could not process the appeal without having a completed authorization form from Davis to allow Dr. Schwaegler to appeal on Davis's behalf. But in fact Dr. Schwaegler had *not* filed an appeal, or any grievance, on behalf of Davis. The appeal was filed by Davis himself. Thus, this letter was erroneous and inapplicable to the Davis appeal. Notably, United never responded to Davis's appeal explicitly relating to Dr. Schwaegler's charges, including both the first and second level appeals, and, similarly, never responded to the second level appeal relating to SSI.

53.     Because Davis has never received a response from United addressing these appeals, including, in particular, his second level appeal relating to the injection claims submitted by both SSI and Dr. Schwaegler, his claims are "deemed exhausted" under ERISA. As such, he is entitled to bring this ERISA action.

**Plaintiff Koohns**

**The MS&G Plan**

54.     Koohns is insured under the MS&G Plan, which is a fully insured plan underwritten by Defendant UHC Washington and governed by ERISA. As a fully insured plan, United pays both the medical expenses owed under the MS&G Plan out of its own assets and administers the plan by making all benefit and appeal determinations. The MS&G Plan expressly designates Defendant UHIC as the "Claims Fiduciary" which has "discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits in accordance with the terms of the Plan."

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

55. The MS&G Plan describes how "Allowed Amounts"—which has the same meaning as "Eligible Expenses in the Target Plan—are calculated, stating:

Allowed Amounts are the amount we determine that we will pay for Benefits . . .

**For Network Benefits**, Allowed Amounts are based on the following:

- When Covered Health Care Services are received from a Network provider, Allowed Amounts are our contracted fee(s) with that provider. . . .

**For Out-of-Network Benefits**, Allowed Amounts are based on either of the following:

- When Covered Health Care Services are received from an out-of-Network provider, Allowed Amounts are determined based on:

  ▪ Negotiated rates agreed to by the out-of-Network provider and either us or one of our vendors, affiliates or subcontractors.

  ▪ If rates have not been negotiated, then one of the following amounts:

    ♦ Allowed Amounts are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market . . .

    ♦ When a rate is not published by CMS for the service, we use an available gap methodology to determine a rate for the service . . .

Like Plaintiff Davis, Koohns received spine care from Dr. Schwaegler and SSI in downtown Seattle, as detailed further below. At the time he received those services, Dr. Schwaegler and SSI were parties to the negotiated fee contract with United vendors Multiplan and PMCS, as described above.

**Koohns's Office Visit Claims**

56. Koohns received health care during office visits with Dr. Schwaegler on two occasions in 2019, once on April 18, 2019 and a second time on September 12, 2019. For each office visit, Dr. Schwaegler billed $154.20.

CLASS ACTION COMPLAINT – 17
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

57.     On UHIC letterhead, United submitted to Koohns an EOB dated May 1, 2019 which indicated that the Allowed Amount for the April 18, 2019 office visit with Dr. Schwaegler was $131.09, with the remaining $23.11 "non-covered." The entire Allowed Amount was then applied to Koohns's deductible, such that he owed the entire amount to Dr. Schwaegler.

58.     The EOB confirmed that United had ignored Dr. Schwaegler's negotiated rate agreement with MultiPlan, in violation of the MS&G Plan, stating, with note "ND," that "this out-of-network service was paid based on Medicare allowed amounts or other sources if no Medicare amount is available."

59.     A similar EOB was issued by United, on UHIC letterhead, to address the September 12, 2019 office visit. Dated October 9, 2019, this EOB was identical: it reported that the Allowed Amount was $131.09, which was applied to Koohns's deductible such that he owed the entire amount. United used the same "ND" remark code to explain that it had applied Medicare rates.

60.     Koohns filed an appeal with United relating to both claims in a letter dated October 25, 2019. He identified and quoted at length the terms from the MS&G Plan that provided that ONET benefits were to be based on "negotiated rates agreed to by the Non-Network provider and either us or one of our vendors, affiliates or subcontractors." He further pointed out that the plan provided an "if, then" premise, such that *only* if there was no negotiated rate agreement could United turn to Medicare as the alternative methodology to determine the Allowed Amount.

61.     Koohns also informed United that SSI and Dr. Schwaegler had negotiated rate agreements with two United vendors, MultiPlan and PMCS, and therefore made the following request:

CLASS ACTION COMPLAINT – 18
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

My appeal request is that these claims be reprocessed using my Negotiated Rate benefits. Specifically, I request the allowed amount be based on the Seattle Spine Institute negotiated rate available to United Healthcare through either MultiPlan or PMCS. The benefit to me is that Seattle Spine Institute would be obligated to write off any amount over the Negotiated Rate, and I would not be personally responsible for that amount.

62.     United, on "UnitedHealthcare" letterhead, responded to Koohns's appeal by letter dated April 18, 2019. This, however, was not an adjudication of the appeal, but only "an acknowledgement that [United] received an appeal request." United did not follow this up with a decision on the appeal within the 60-day deadline required under ERISA, such that there is "deemed exhaustion" under the ERISA claims procedure regulations. *See* 29 C.F.R. § 2560.503-l(1).

63.     After having not received a response to his appeal, Koohns filed a complaint with the Washington State Office of the Insurance Commissioner ("OIC") by letter dated May 5, 2020. The next day, May 6, 2020, the OIC forwarded Koohns's grievance to United, asking for a response.

64.     On May 19, 2020, United (on UnitedHealthcare letterhead) finally issued its response to the appeal. It confirmed that the appeal had been received on October 25, 2019, but that United had only completed the appeal on May 19, 2020, or nearly seven months later, which was five months after the ERISA-based deadline.

65.      In explaining why it had used Medicare rates to set the Allowed Amount, United stated:

The physician service(s) being appealed processed previously as per your out-of-network plan benefits. The reason it processed this way was because the claim was processed using the Maximum Non-Network Reimbursement Program (MNRP). MNRP is a program used to reimburse non-network physicians, facilities and other health care providers. MNRP uses rates and methodologies established by Medicare and replaces Reasonable and Customary (R&C) processing for plans that

CLASS ACTION COMPLAINT – 19
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

utilize MNRP. This program uses the Centers for Medicare and Medicaid Services (CMS) Fee Schedules.

66.     United then quoted the entire definition of "Allowed Amounts" from the MS&G Plan, including that the ONET Allowed Amount is to be based, first, on "Negotiated rates agreed to by the out-of-Network provider and either us or one of our vendors, affiliates or subcontractors." After that, it stated: "Because the claim(s) for this service(s) was processed according to the above plan provision(s), our original determination remains unchanged, and the determination is upheld." Subsequently, United added: "Please understand that this is your final level of internal appeal with us."

67.     United's appeal denial made no sense. While it confirmed that it used Medicare rates to set the Allowed Amount, it also quoted the MS&G Plan language which requires that Medicare should **not** be used if the ONET provider has a negotiated rate agreement with a United vendor. Despite stating that the claims had been processed "according to" the plan provisions, it ignored the fact that SSI and Dr. Schwaegler had a negotiated rate agreement with two United vendors, MultiPlan and PMCS, such that United had, in fact, violated the plan terms.

68.     On May 28, 2020, United responded to the Washington OIC concerning Koohns's grievance. In explaining how it had processed his claims, United stated: "We processed the claim allowing the Eligible Expense rate of $131.09."

69.     After quoting the ONET reimbursement policy under the MS&G Plan, United attempted to explain why it nevertheless used Medicare rates:

> Although a provider may have an agreement with MultiPlan or PMCS, for members enrolled in this type of plan, there are new limits regarding the access to shared savings discounts. Since the member's Benefit Plan allows out-of-network pricing using a percentage of the available published rates allowed by Medicare for the same or similar services within the geographic market, then the claim(s) will be processed using those rates instead of Shared Savings. The use of Shared

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Savings Program providers or fee-negotiated agreements is not a guarantee of benefits, nor a guarantee that a discount will be applicable.

70.     This defense fails because the so-called "new limits" being applied by United are not part of the MS&G Plan, nor does the plan language that requires United to apply vendor contracts for ONET reimbursement incorporate or refer to United's "Shared Savings" program. As a result, when United applied this policy to use Medicare rates instead of an existing negotiated rate agreement with MultiPlan or PMCS, United violated the clear and unambiguous plan terms which required application of the pre-existing vendor contracts when processing ONET claims.

**Koohns's Surgical Claims**

71.     In October 2019, Koohns received spine surgery at SSI to address his severe back pain. The surgery was "staged," meaning it was performed in two parts. Part one was performed on October 21, 2019, and the second part was performed two days later, on October 23, 2019. Both surgeries were pre-authorized by United.

72.     The stage one surgery was performed by Dr. Schwaegler, for which he billed $9,970.00. In processing the claim, as described in an EOB issued by UHC Washington and dated May 4, 2021, United identified the Allowed Amount as $1,482.81. United identified Koohns as being responsible for the unpaid charges of $8,618.28 (with $131.09 attributable to his deductible, and $0.00 in coinsurance).

73.     In setting the Allowed Amount, United applied Medicare rates, citing note "ND," which stated: "This out-of-network service was paid based on Medicare allowed amounts or other sources if no Medicare amount is available."

74.     SSI billed $123,792.55 in facility charges for stage 1 of Mr. Koohns's surgery. As reported in an EOB issued by UHC Washington and dated February 4, 2021, United processed

CLASS ACTION COMPLAINT – 21
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

the claim, again defaulting to Medicare methodology (as indicated by remark codes "ND" and "NE"), allowing a total of $23,639.00. United identified Mr. Koohns as being responsible for the unpaid charges of $100,816.62 ($0.00 in deductible, and $753.07 in coinsurance).

75.     The second stage of the spinal surgery was performed at SSI by Dr. Schwaegler, along with the assistance of Mr. Fernandez. For this service, Dr. Schwaegler billed $30,357.50, Mr. Fernandez billed $7,578.15, and SSI billed $180,081.26 in facility charges.

76.     United processed these stage 2 claims again using Medicare rates to set the Allowed Amount, issuing in EOBs the identical explanation concerning the use of Medicare allowed amounts for each claim.

- For Dr. Schwaegler's claim, United allowed $5,995.48 on charges of $30,357.50, as reported in two EOBs issued by UHC Washington dated, respectively, September 29, 2020, and October 1, 2020. United identified Koohns as being responsible for the unpaid charges of $29,103.66 ($3,487.82 in deductible, and $1,253.82 in coinsurance).

- For Mr. Fernandez's claim, United allowed $839.37 on charges of $7,578.15. In an EOB issued by UHC Washington dated October 5, 2020. United identified Koohns as being responsible for unpaid charges of $7,158.46 ($0.00 in deductible, and $419.68 in coinsurance).

- For the SSI facility claim, United allowed $10,146.88 on charges of $180,081.26. Claim processing was reported in multiple EOBs issued by UHC Washington, and collectively United identified Koohns as being responsible for the unpaid charges of $175,007.81 ($0.00 in deductible, and $5,073.43 in coinsurance).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

77.     In processing the claims for both the first and second stage surgeries, United ignored the negotiated rate agreement that SSI has with MultiPlan and/or PMCS, both United vendors. In so doing, United failed to comply with the terms of the MS&G Plan requiring use of one of these agreements to set the Allowed Amount. Instead, United turned to an alternative methodology (Medicare rates) which—under the MS&G Plan—was only to be used if there is no negotiated rate agreement. Had United properly carried out the terms in the MS&G Plan, his financial responsibility would have been limited to deductible and coinsurance only, which collectively (all claims related to his surgery) total $16,192.34. This is far less than the $320,705.73 that United has identified as being his financial responsibility due solely to United's failure to use the negotiated rate in either of SSI's vendor agreements.

78.     By letter dated March 12, 2021, Koohns appealed the adverse benefit determinations issued by United with respect to his October 21 and 23, 2019 surgeries, stating:

> I am writing to appeal the allowed amounts for each claim as I believe they were incorrectly determined based on Medicare rates. The incorrect processing has left me financially responsible for more than $300,000! My appeal request is that United Healthcare reprocess these claims based on my Plan's *negotiated rate* benefits. Such corrected processing will leave me responsible for deductible and coinsurance amounts only, as intended by the Plan and as expected by me.

79.     In his appeal, Koohns described in detail the MS&G Plan provision relating to ONET reimbursements, as detailed herein, and why it was improper for United to ignore the MultiPlan contract and apply Medicare rates instead. He concluded with the following:

> My Plan language makes it clear that Out-of-Network benefits include negotiated rate agreements when they exist, and are to be used preferentially to any other methods listed. My appeal request is simple and straightforward: I request my claims be reprocessed using my Out-of-Network negotiated rate benefit. Specifically, I request the allowed amount be based on the Seattle Spine Institute negotiated rate available to United Healthcare through either MultiPlan or PMCS. The benefit to me is that Seattle Spine Institute would be obligated to write off any charge amounts over the negotiated rate, eliminating balance billing me those

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

charges, and leaving me responsible for coinsurance and deductible amounts only. This would be consistent with my Plan benefits and would be a tremendous financial benefit to me.

80.     United sent a letter to Koohns dated April 5, 2021 in response to his appeal. However, the letter did not address the content or merits of the appeal. Instead, it was merely a copy of a different letter United had forwarded to Dr. Schwaegler on the same date. That letter informed Dr. Schwaegler that he would need to send United a "complete authorization" to allow him to appeal on behalf of Koohns. This made no sense, though, since Koohns, not Dr. Schwaegler, had appealed his own claims in the letter he sent United dated March 12, 2021, so there was no need for an authorization for Dr. Schwaegler.

81.     United then sent a second letter to Koohns dated April 18, 2021, which purported to respond to the appeal, stating:

We received your request about the above claim for you [identifying the October 21, 2019 surgery performed at SSI]. This claim was for health care services provided by Seattle Spine Institute, who is not in your health benefit plan's network. Therefore, the coverage amount was lower because the health care services were received by a non-network physician, facility or health care professional.

Please remember that your coverage amount is typically higher when you use a physician, facility or health care professional that participates in your network.

82.     As evident from this quote, which encompasses the entire substantive response contained in the letter, United failed to respond to the substance of Koohns's appeal, including by failing to even acknowledge his contention that United should have applied the MultiPlan or PMCS contracts when setting the Allowed Amount.

83.     Because this represents United's final response to Koohns's appeal, and did not offer any further appeal rights, this satisfies Koohns's obligation to exhaust administrative remedies under the MS&G Plan prior to pursuing litigation through this action. In any event, the

CLASS ACTION COMPLAINT – 24
[Case No. 2:21-cv-01220]

MS&G Plan only requires a single appeal of an adverse benefit determination, which Koohns pursued and which United denied, such that his internal appeals are exhausted.

84.     United's adjudication of Koohns's claims not only breached the terms of the underlying Vendor Contract Plan, but also constituted a violation of United's fiduciary duties under ERISA, including a breach of its duty of loyalty. Because the MS&G Plan is fully insured, any benefit payments come out of United's own assets. As a result, United benefited itself by ignoring the negotiated rate agreement that SSI and its providers had with MultiPlan and PMCS, and setting the Allowed Amount based on the far lower Medicare rates instead. United therefore put its own interests over those of Koohns, in violation of United's duty of loyalty to administer the MS&G Plan solely in the interest of the plan beneficiaries, including Koohns.

**Plaintiff Lockhart**

**The Jacobs Plan**

85.     Lockhart is insured under the Jacobs Plan, which is a self-funded plan governed by ERISA. Lockhart was provided an insurance card which specifies that he is a member of a UnitedHealthcare Choice Plus-HSA plan that is "administered by United Healthcare Services, Inc." The insurance card includes the logos of UnitedHealthcare and Jacobs. In addition, the insurance card includes a logo for MultiPlan.

86.     The written terms of the Jacobs Plan explain that "Jacobs has delegated to UnitedHealthcare the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the Plan."

CLASS ACTION COMPLAINT – 25
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

87.     The written terms of the Jacobs Plan largely track the language in the Target Plan with respect to how Eligible Expenses—which has the same meaning as "Allowed Amount" in the MS&G Plan—are calculated, stating:

**For Network Benefits.** Eligible Expenses are based on the following:

- When Covered Health Services are received from a Network provider, Eligible Expenses are UnitedHealthcare's contracted fee(s) with that provider. . . .

**For Non-Network Benefits,** Eligible Expenses are based on either of the following:

- When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

  ❖ Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.

  ❖ If rates have not been negotiated, then one of the following amounts:

    1) For Covered Health Services other than Pharmaceutical Products, Eligible Expenses are determined based on available data resources of competitive fees in that geographic area.

    2) When Covered Health Services are Pharmaceutical Products, Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic area.

88.     As in the Target Plan, this plan provision requires United to first look to any agreements the ONET provider has with United or one of its vendors and apply the negotiated rates from any such agreement to set Eligible Expenses. The second bullet under the "**For Non-Network Benefits**" section is articulated with an "if, then…" premise, identifying that *only in the absence of such an agreement* is United able to turn to the alternate methodologies, such as Medicare rates.

CLASS ACTION COMPLAINT – 26
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

89.     Like the MS&G and Target Plans, the Jacobs Plan is a Vendor Contract Plan that requires use of negotiated rates with United vendors to set the allowed amount for ONET services, with the alternative methodologies used only if rates have not been negotiated.

**SCV's MultiPlan Contract and Lockhart's Benefit Claim**

90.     In April 2020, Lockhart sought surgery at the Surgery Center of Vierra, LLC ("SCV") to address his years-long history of severe low back pain.

91.     SCV is an ONET provider with respect to United.

92.     SCV is party to a contract with MultiPlan, which contract became effective as of November 1, 2017. It provides that the "Contract Rate" for outpatient surgical procedures is the lesser of 500% of the CMS fee schedule, if applicable, or 60% of billed charges, less any co-payments, deductibles or coinsurance the applicable plan imposed on the patient. If CMS does not have a fee schedule rate for a particular procedure, then the contract calls for payment of 60% of billed charges. Pursuant to the contract, SCV agreed to accept the contracted rate as payment in full for claims submitted to plans administered by one of MultiPlan's clients, such as United, and agreed not to balance bill the patient for the difference between the billed charges and the contracted rate.

93.     MultiPlan subsequently confirmed to SCV that United was one of its clients.

94.     By letter dated April 10, 2020, United gave prior authorization for Lockhart's surgery, stating: "Based on the information submitted, we have determined that the treatment is medically necessary and is eligible for coverage up to the amount/frequency included in the request."

95.     On April 15, 2020, SCV provided facility services (operating room services) for Lockhart's spinal surgery.

CLASS ACTION COMPLAINT – 27
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

96.     The American Medical Association ("AMA") has created and publishes the Current Procedural Terminology ("CPT"), which has become the industry standard providers use to report surgical procedures and services to insurance companies. This is true for physician providers as well as facility providers. Services associated with specific procedures are represented by individual Current Procedural Terminology codes ("CPT Codes"), with a separate five-digit number used for each unique health care service, along with two-digit modifiers that may be added to a claim to provide additional details concerning the service that was provided. On behalf of Lockhart, SCV submitted a claim to United based on services represented by 14 separate CPT Codes, for which SCV billed a total of $305,964.00.

97.     When submitting the claim for services provided to Lockhart, SCV wrote a letter to United dated April 22, 2020 identifying that SCV had a Multiplan agreement in place, and that Lockhart's claim should be processed per that agreement based on his plan benefit. The referenced MultiPlan agreement was also provided, with the letter specifically stating: "This patient's plan falls under a contract that we have with **MULTIPLAN** – please see the attached agreement – and the expectations would be his claim would process according to this contract." On June 17, 2020, United (under letterhead for Defendant UHIC and its Affiliates, using the executive office address of Defendant UHG) submitted an Electronic Provider Remittance Advice ("PRA") to SCV, which detailed how United had processed the claim. United identified the total "Amount Allowed" for all services provided to be $15,370.40, and applied $8,751.91 of that amount to Lockhart's deductible/coinsurance/copayment; United then reported that it had paid SCV $6,618.49.

98.     Notably, United used the term "Allowed Amount" in the PRA to represent the "Eligible Expenses" under the Jacobs Plan. In so doing, United demonstrated that these terms have the same meaning and are interchangeable.

CLASS ACTION COMPLAINT – 28
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

99.     United processed Lockhart's claim allowing coverage for only one of the 14 procedures, for which the provider had billed CPT Code 22633. CPT Code 22633 represents only a small portion of the services provided, with its description reading: "Arthrodesis, combined posterior or posterolateral technique with posterior interbody technique including laminectomy and/or discectomy sufficient to prepare interspace (other than for decompression), single interspace and segment; lumbar." For services related to this procedure, SCV's charges were $58,850.

100.     In the PRA, the entire Allowed Amount for all services was applied solely to the single CPT Code, 22633. For services represented by the other 13 CPT Codes, United identified nothing for the Allowed Amount and paid nothing to SCV, suggesting United's determination that all additional services provided were bundled into services related to this single procedure.

101.     In determining the Eligible Expenses for the only covered service, United used the amount set by Data iSight, a third-party vendor that United frequently uses to "reprice" ONET claims. Typically, United sends an ONET bill to Data iSight, which then uses its own proprietary methodology to determine what it deems to be a valid allowable amount. In the processing of Lockhart's claim, Data iSight explained the methodology it used as follows:

> **Methodology.** The Data iSight reimbursement determination is calculated using paid claims data from millions of claims from many different payers and patients with a distribution of age, gender and location that reflects the U.S. Census.
>
> The Data iSight reimbursement calculation is based upon standard relative value units where applicable for each CPT/HCPCS code multiplied by a conversion factor. The conversion factor is based on the median accepted reimbursement amount by physicians/healthcare providers nationwide for each code.

102.     Importantly, Data iSight, or its pricing methodology, is not mentioned in the Jacobs Plan. Nor is the methodology described by Data iSight consistent with the negotiated rate

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

SCV has with Multiplan—the negotiated rate agreement United is required to use as its highest priority for determining Eligible Expenses.

103.    In summary, United ignored the letter by SCV, as well as the mandate in the Jacobs Plan that Eligible Expenses be determined by the terms in any existing vendor contract. Instead, United sent the claim to Data iSight for pricing to determine the Eligible Expenses. The methodology used by Data iSight yielded a benefit payment well below what should have been paid under the Jacobs Plan based on the existing contract SCV had entered into with MultiPlan.

104.    SCV sent another letter to United dated July 15, 2020. United did not respond.

105.    With no response to either letter, SCV filed what it identified as a formal first level appeal by letter dated December 14, 2020. SCV cited the relevant written plan terms and demanded that United process Lockhart's claim based on his ONET benefits under the Jacobs Plan—specifically, based on SCV's MultiPlan negotiated rate agreement.

106.    United denied the appeal by letter to Lockhart dated January 11, 2021, stating:

This claim was processed correctly according to your plan benefits. The claim was processed using a rate that was agreed to by the provider and Data iSight. The discount shown is your savings and is not included in the amount you owe. You only need to pay your coinsurance, copayment, and/or deductible as listed on your Explanation of Benefits. If your provider bills you for any other amount, please call the toll-free number listed on your health plan ID card. If your provider has questions about the reimbursement amount, they may visit Data iSight or call toll-free 1-866-835-4022.

107.    In its response, United failed to acknowledge either the existence of the contract between SCV and MultiPlan or the requirement under the Jacobs Plan that United use the Multiplan agreement as the highest order of priority to determine the Eligible Expenses for Lockhart's claim.

CLASS ACTION COMPLAINT – 30
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

108.     United's statement that "[t]he claim was processed using a rate that was agreed to by the provider and Data iSight" was false. In fact, SCV was never contacted by Data iSight nor did it agree to the Data iSight processing. United also misrepresented to Lockhart that he did not owe the unpaid balance to SCV, in contravention of the plan's written terms.

109.     SCV filed what it identified as a second level appeal with United dated March 12, 2021, which reiterated its position that United should process Lockhart's claim based on the negotiated rate agreement SCV had with MultiPlan.

110.     United denied this appeal by letter to Lockhart dated April 7, 2021, stating that "the original determination remains unchanged, and is upheld." It further stated that "[t]his claim has been reimbursed using Data iSight, which utilizes cost data if available (facilities) or paid data (professionals)." United also confirmed that Lockhart had "exhausted all levels of appeal with United Healthcare." United again failed to acknowledge both the existence of the MultiPlan/SCV agreement, as well as the Jacobs Plan requirement that it use the MultiPlan agreement as the highest order of priority to determine Eligible Expenses in the processing of Lockhart's claim.

111.     United's processing using the Data iSight methodology resulted in the Jacobs Plan dramatically underpaying Lockhart's claim, leaving him responsible for 98% of claim charges (almost $300,000 of the $306,000 in charges). If, instead, United had processed the claim correctly using SCV's Multiplan agreement, Lockhart would have been financially responsible for deductible and coinsurance amounts only, because SCV is required under the terms of its Multiplan agreement to accept the negotiated rates as payment in full.

112.     As was true with respect to the claims of Plaintiffs Koohns and Davis, United's adjudication of Lockhart's claim not only was contrary to the terms of Jacobs Plan and in violation of United's fiduciary duties under ERISA, but also was a breach of the duty of loyalty. By

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

exercising its discretion in the manner in which it did, United allowed its customer, the Jacobs Plan, to reduce its benefit expense, incorrectly shifting the cost of that benefit to its member Lockhart. United did this to increase the likelihood that the Jacobs Plan would continue to employ United as its claims administrator, despite the fact that in doing so United ignored Lockhart's interest in ensuring that the Jacobs Plan's written terms, and thus the MultiPlan contract, were followed. Stated differently, United breached its fiduciary duty to administer the Jacobs Plan solely in the interest of the plan beneficiaries, including Lockhart.

### United's Internal ONET Reimbursement Policy

113.    As an ERISA fiduciary, United is required to make benefit determinations consistent with the terms and conditions of the underlying benefit plan, so long as doing so does not otherwise violate ERISA. *See* 29 U.S.C. § 1104(a)(1)(D). Here, that means that United must apply the terms of the Vendor Contract Plans which require setting the allowed amounts for ONET services based on negotiated rate agreements that ONET providers have entered into with United vendors. Only if no such agreement exists does the Plan authorize United to move to alternative methodologies.

114.    As detailed herein, United has breached its fiduciary duties under ERISA by repeatedly violating the terms of the Vendor Contract Plans. Specifically, United has consistently ignored available vendor negotiated rate agreements in favor of reducing its financial obligation (or that of its self-insured clients) by using alternative claim processing methodologies, including Medicare or third-party pricing via Data iSight.

115.    In doing so, United is following an internal guideline that it has adopted giving itself the discretion to ignore plan terms, a guideline titled "Policy for Out-of-Network Providers Contracted   with   a   Third-Party   Network   Vendor."   *See*   https://www.uhcprovider.com

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

/content/dam/provider/docs/public/policies/protocols/Disclosure-Policy-Non-Par-Providers-Third-Parties.pdf ("United ONET Policy").

116.    Pursuant to the United ONET Policy, United purports to communicate with ONET providers, stating: "As an out-of-network provider you may provide healthcare services to members of benefit plans offered or administered by UnitedHealthcare or its affiliates (collectively, 'UnitedHealthcare')." It then describes how it deals with negotiated rate contracts that ONET providers may have with United vendors:

> Not all member benefit plans include out-of-network benefits for elective services. When out-of-network network benefits are available for elective services or if the services are deemed to be at the in-network benefit level, UnitedHealthcare may elect to process out-of-network claims under its Shared Savings Program as described in a member's benefit plan. Under the Shared Savings Program UnitedHealthcare may contract with third-party network vendors to provide additional savings for our members. These third-party network vendors may have contracted with you directly.

> When processing an out-of-network claim, UnitedHealthcare reserves the right to pay the lesser of the amount in your third-party network vendor contract or an amount consistent with United's benchmark standards.

> This policy does not apply where prohibited by law.

117.    Through this policy, United recognizes that it contracts with third-party vendors that in turn may contract with ONET providers who offer services to United-insured patients. However, it unilaterally "reserves" for itself "the right to pay the lesser of the amount" otherwise payable under the vendor contract and an amount established by "benchmark standards" adopted by United. By applying this internal policy, United calculates improperly low benefit payments, shifting financial responsibility for such benefits from itself (or from its self-insured clients) to plan members. The implications and adverse consequences of applying this policy are reflected in the foregoing allegations about the claims of Plaintiffs Koohns, Davis and Lockhart.

CLASS ACTION COMPLAINT – 33
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

118.     The United ONET Policy violates the unambiguous terms of the Vendor Contract Plans. The Vendor Contract Plans require United, as the claims administrator and ERISA fiduciary, to apply the contracted rate established by a pre-existing vendor contract for setting the allowed amounts for ONET services. The Vendor Contract Plans do not give United the discretion to ignore this requirement, nor do they permit United to "reserve" for itself the right to ignore these clear and unambiguous plan terms.

119.     By applying the United ONET Policy to set the allowed amounts for ONET services below the rates established by pre-existing negotiated rate agreements ONET providers have with United vendors, United is breaching the Vendor Contract Plan terms and violating its fiduciary duties under ERISA.

120.     United's adoption of the United ONET Policy demonstrates that United was influenced by its conflict of interest in making benefit determinations. By adopting the United ONET Policy, United put its own interests over those of its beneficiaries by paying lower benefits than were, in fact, required by its Vendor Contract Plans.

## CLASS ALLEGATIONS

121.     United administers numerous Vendor Contract Plans with written plan language that is materially indistinguishable from the MS&G, Target, and Jacobs Plans as alleged herein.

122.     MultiPlan, PMCS, and other vendors have negotiated rate agreements with thousands of ONET providers. These vendors make their negotiated rate agreements available to health care plans and administrators, including United, pursuant to which the plans and administrators can take advantage of the discounted rates in processing ONET claims.

123.     United has entered into agreements with MultiPlan, PMCS, and other vendors, pursuant to which it has access to their discounted rate agreements with ONET providers. When

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

doing so will benefit itself or its self-funded clients, United at times applies those agreements when processing ONET claims, while on many other occasions, such as with the Koohns, Davis, and Lockhart examples detailed herein, it ignores the vendor agreements, in violation of the clear and unambiguous terms of the Vendor Contract Plans.

124.    Based on information and belief, there was nothing unique about the way United adjudicated Plaintiffs' claims. Instead, it appears that United engaged in similar misconduct with respect to numerous ERISA beneficiaries insured by Vendor Contract Plans, as it applied the United ONET Policy. The fact that United ignored the MultiPlan or other vendor contracts for ONET providers as far apart as the states of Washington and Florida strongly suggests that United's practice is widespread.

125.    As a result, Plaintiffs bring claims on behalf of a class (the "Class") defined as follows:

> All persons in the United States who were insured under a Vendor Contract Plan that is governed by ERISA and where United processed a claim for ONET services and determined that benefits were due and owing under the Plan without applying a pre-existing agreement that set negotiated rates for ONET provider services with United or one of its vendors, affiliates or subcontractors.

126.    The members of this proposed Class are so numerous as to make joinder of all members impractical. Although the precise number of United insured impacted by United's conduct is known only to United and can be obtained during discovery, United is one of the largest insurance companies in the United States and administers claims on behalf of millions of insureds. And given that two of United's vendors are MultiPlan and PMCS, which alone represent thousands of negotiated rate agreements, it is reasonable to assume that there are thousands of ERISA insureds who fall within the proposed Class.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

127.     There are questions of law or fact common to the Class, including but not limited to whether, in setting the allowed amount for ONET services under a Vendor Contract Plan (whether labeled "Eligible Expense," "Eligible Charge," "Allowed Amount," or other synonymous term), United is required to first utilized any pre-existing agreement between an ONET provider and any of United's vendors.

128.     Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims, and have no interests antagonistic to or in conflict with those of the Class.

129.     United has acted on grounds that apply generally to the Class, as United has engaged in a uniform practice of reducing benefit payments below the level required by written terms of Vendor Contract Plans by ignoring the requirements of pre-existing contracts between ONET providers and United or any of its vendors.

130.     In its role as a claims administrator and ERISA fiduciary for the plans at issue, United maintains records of when and how it receives, processes, pays, or refuses to pay claims for ONET services. Moreover, United has records, or will have the ability to access such records, reflecting any agreements that it or any of its vendors have with Class members. Accordingly, the members of the Class can be readily and objectively ascertained through use of United's records or the records United can access from its vendors.

## COUNT I
## (Claim for relief under ERISA, 29 U.S.C. § 1132(a)(1)(B))

131.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

132.     This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

133.     United violated the written terms of Vendor Contract Plans it administered and administers, as well as its fiduciary duty to honor written plan terms, by setting the Allowed Amount for ONET services without applying the negotiated rates established under contracts between ONET providers and United or any of its vendors.

134.     United also violated its ERISA fiduciary duties, including its duty of loyalty, because its decision not to apply such negotiated rates reflected its elevation of its own interests and those of its employer customers above the interests of plan members, and the duty to act in accordance with the written terms of the plan.

**COUNT II**
**(Claim for relief under ERISA, 29 U.S.C. § 1132(a)(3)(A))**

135.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

136.     This count is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), to enjoin United's unlawful acts and practices, as detailed herein. Plaintiffs bring this claim only to the extent that the Court finds that the injunctive relief sought below is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

**COUNT III**
**(Claim for relief under ERISA, 29 U.S.C. § 1132(a)(3)(B))**

137.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

138.     This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief to redress United's violation of ERISA and of its Vendor Contract Plans. Plaintiffs

CLASS ACTION COMPLAINT – 37
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

bring this claim only to the extent that the Court finds that the equitable relief sought below is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

**WHEREFORE**, Plaintiffs demand judgment in their favor against United as follows:

A.      Certifying the Class and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.      Declaring that United violated its legal obligations in the manner described herein;

C.      Permanently enjoining United from engaging in the misconduct described herein;

D.      Awarding benefits due, plus pre- and post-judgment interest, or ordering United to re-adjudicate the benefit amounts and cause the full amount of benefits owed to be paid, based on the amounts required under the terms of the negotiated rate agreements that the ONET providers have entered into with United or one of its vendors, plus pre- and post-judgment interest;

E.      Ordering United to disgorge any profits it earned through the ERISA and plan violations detailed herein, to issue restitution for the losses suffered by Class Members as a result of such misconduct, and/or to order payment of an appropriate surcharge as necessary to make Class Members whole;

F.      Awarding Plaintiffs disbursements and expenses of this action, including reasonable attorney fees, in amounts to be determined by the Court; and

G.      Granting such other and further equitable or remedial relief as is just and proper.

DATED: September 7, 2021.

By:  _s/ Eleanor Hamburger_
Eleanor Hamburger (WSBA #26478)
**SIRIANNI YOUTZ**
**SPOONEMORE HAMBURGER PLLC**
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Fax (206) 223-0246
ehamburger@sylaw.com

CLASS ACTION COMPLAINT – 38
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

1
2
3
4
5

D. Brian Hufford, Esq. (*pro hac vice pending*)
Jason S. Cowart, Esq. (*pro hac vice pending*)
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com

6
7
8
9

Andrew N. Goldfarb, Esq. (*pro hac vice pending*)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
agoldfarb@zuckerman.com

10
11
12
13

Jeffrey L. Greyber, Esq. (*pro hac vice pending*)
**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd., Suite 310W
Boca Raton, FL 33431
Tel. (561) 405-7966
jgreyber@callagylaw.com

14
15
16
17

Meiram Bendat, Esq. (*pro hac vice pending*)
**PSYCH-APPEAL, INC.**
7 West Figueroa Street, Suite 300
Santa Barbara, CA 93101
Tel. (310) 598-3690, ext. 101
mbendat@psych-appeal.com

18

*Counsel for Plaintiffs and the Putative Class*

19
20
21
22
23
24
25
26

CLASS ACTION COMPLAINT – 39
[Case No. 2:21-cv-01220]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246