Chief Judge Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| RICK DAVIS, SR., MATHEW KOOHNS, and BRETT A. LOCKHART, SR., individually and on behalf of all others similarly situated, | Case No. 2:21-cv-01220-RSM |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [12(b)(6) & 12(b)(1)]** |
| v. | NOTE ON MOTION CALENDAR: |
| UNITEDHEALTH GROUP INCORPORATED, UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE OF WASHINGTON, INC., and UNITED HEALTHCARE SERVICES, INC., | February 25, 2022 |
| | ORAL ARGUMENT REQUESTED |
| Defendants. | |

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

III.  LEGAL STANDARD ......................................................................................... 8

IV.   ARGUMENT ..................................................................................................... 9

    A.   Plaintiffs' Section 502(a)(1)(B) Benefits Claim (Count I). ........................................ 9

        1.   Plaintiffs' Plans Allow United To Use One Of Several Options To Pay Out-Of-Network Claims, So Their Claim For Benefits That Is Premised On The Required Use Of Multiplan Contracts Must Fail. ...............................9

        2.   Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty (Count I)......13

    B.   Plaintiffs' Section 502(a)(3) Claims (Counts II and III)............................................ 14

        1.   Plaintiffs Are Not Entitled To "Equitable Relief" Because They Fundamentally Seek Payment Of Benefits, A Remedy Already Provided By Section 502(a)(1)(B)...............................................................................14

        2.   Plaintiffs Have Not Alleged Facts Sufficient To Support Their Theory That United Breached Any Fiduciary Duty. ......................................................16

        3.   Plaintiffs Lack Article III Standing To Pursue An Injunction Or Other Prospective Relief Because They Have Not Alleged A Risk Of Future Harm...................................................................................................................17

V.    CONCLUSION ................................................................................................. 18

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. v. Microsoft Corp. Welfare Plan*,
No. 17-1889-JCC, 2018 WL 2684387 (W.D. Wash. June 5, 2018) ....................................................9

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ..........................................................................................................................14

*Alquahwagi v. Shelby Enterprises, Inc.*,
No. 14-13691, 2016 WL 4771329 (E.D. Mich. Sept. 14, 2016)...............................................12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................................8, 9

*Ashley v. Prudential Ins. Co. of Am.*,
No. 10-518, 2011 WL 1467819 (E.D. Va. Apr. 18, 2011) .........................................................10, 11

*Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*,
958 F. Supp. 2d 1223 (W.D. Wash. 2013)........................................................................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................................8

*Bellanger v. Health Plan of Nevada, Inc.*,
814 F. Supp. 914 (D. Nev. 1992)......................................................................................................17

*Prudential Ins. Co. of Am. v. Brimberry*,
No. 13-07429, 2014 WL 3510109 (C.D. Cal. July 11, 2014).........................................................11

*Carver v. Lehman*,
558 F.3d 869 (9th Cir. 2009).............................................................................................................12

*Castillo v. Metro. Life Ins. Co.*,
970 F.3d 1224 (9th Cir. 2020)...........................................................................................................14

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985)...........................................................................................................................16

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)......................................................................................................................2, 10

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).............................................................................................................................18

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................................................................................................17

*Curtiss–Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)...............................................................................................................................9

*Cutter & Buck, Inc. v. Genesis Ins. Co.*,
306 F. Supp. 2d 988 (W.D. Wash. 2004), *aff'd*, 144 F. App'x 600 (9th Cir. 2005).............8, 10, 11

Gibson, Dunn &
Crutcher LLP

ii

**TABLE OF AUTHORITIES**
**(CONT.)**

Page(s)

*Delgado v. ILWU-PMA Welfare Plan*,
No. 18-5539, 2018 WL 8014336 (C.D. Cal. Nov. 20, 2018)......................................................17

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019)..............................................................................................14, 15

*Ehrlich v. Hartford Life & Accident Ins. Co.*,
No. 20-2284, 2021 WL 4472845 (N.D. Cal. May 7, 2021)....................................................15

*Evans v. Safeco Life Ins. Co.*,
916 F.2d 1437 (9th Cir. 1990)..................................................................................................8

*Forsman v. Port of Seattle*,
No. 21-867-RSM, 2021 WL 4476866 (W.D. Wash. Sept. 30, 2021).......................................8

*Fortier v. Anthem*,
No. 20-56361, 2021 WL 5277099 (9th Cir. Nov. 12, 2021)...............................................8, 15

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)...............................................................................................................15

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
571 U.S. 99 (2013)..................................................................................................................10

*Herzog v. Prop. & Cas. Ins. Co. of Hartford*,
No. 16-5083-KLS, 2016 WL 6997083 (W.D. Wash. Nov. 30, 2016)....................................10

*McCabe v. Cap. Mercury Apparel*,
752 F. Supp. 2d 396 (S.D.N.Y. 2010).....................................................................................16

*Minerley v. Aetna, Inc.*,
No. 13-1377, 2019 WL 2635991 (D.N.J. June 27, 2019), *aff'd*, 801 F. App'x 861
(3d Cir. 2020)..........................................................................................................................13

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
136 S. Ct. 651 (2016)..............................................................................................................14

*Nielsen v. Unum Life Ins. Co. of Am.*,
58 F. Supp. 3d 1152 (W.D. Wash. 2014)................................................................................14

*Rodriguez v. Prudential Ins. Co. of Am.*,
No. 18-5674-RBL, 2019 WL 1040406 (W.D. Wash. Mar. 5, 2019).........................................8

*Sargent v. S. California Edison 401(k) Sav. Plan*,
No. 20-1296, 2021 WL 347689 (S.D. Cal. Feb. 2, 2021).......................................................16

*Schumacher v. Inslee*,
474 F. Supp. 3d 1172 (W.D. Wash. 2020)...............................................................................17

*Schuman v. Microchip Tech. Inc.*,
302 F. Supp. 3d 1101 (N.D. Cal. 2018)..................................................................................14

Gibson, Dunn &
Crutcher LLP

iii

## TABLE OF AUTHORITIES
### (CONT.)

Page(s)

*Smith v. Cigna Health & Life Ins. Co.*,
   No. 20-624, 2020 WL 5834786 (D. Or. Sept. 30, 2020) ...............................................................15

*Snow v. Standard Ins. Co.*,
   87 F.3d 327 (9th Cir. 1996), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) .......................................................................10

*Sorger v. Novartis Corp.*,
   No. 20-15224, 2021 WL 3758280 (9th Cir. Aug. 25, 2021)...........................................................9

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011).......................................................................................................8

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ....................................................................................................................17

*Thole v. U.S. Bank*,
   140 S. Ct. 1615 (2020) .................................................................................................................17

*Tuttle v. Varian Med. Sys. Inc. Med. Plan Adm'r*,
   No. 12-01424, 2014 WL 4977681 (D. Ariz. Sept. 19, 2014)........................................................16

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ........................................................................................................................1

*Varity Corp v. Howe*,
   516 U.S. 489 (1996) ....................................................................................................................14

*VMG Salsoul, LLC v. Ciccone*,
   824 F.3d 871 (9th Cir. 2016).................................................................................................11, 12

*Welch v. Unum Life Ins. Co. of Am.*,
   382 F.3d 1078 (10th Cir. 2004).....................................................................................................8

**Statutes**

29 U.S.C. § 1104(a)(1)(A)(ii) ...............................................................................................2, 16

29 U.S.C. § 1132(a)(1)(B)....................................................................................................2, 9

29 U.S.C. § 1132(a)(3)(B).....................................................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants UnitedHealth Group Inc., UnitedHealthcare Insurance Company, UnitedHealthcare of Washington, Inc., and United HealthCare Services, Inc. (collectively, "United") move the Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiffs' claims under 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(3)(A), and § 1132(a)(3)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") for failure to state a claim upon which relief may be granted, and for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1).

Defendants' Motion is based upon the Memorandum of Points and Authorities set forth below, as well as the records, pleadings, and papers on file in this action, including the Declaration of Jane Stalinski and supporting exhibits, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

## I.     INTRODUCTION

Plaintiffs, three members of United-administered, ERISA-governed health plans ("the Plans"), chose to receive services from health care providers outside of their Plans' approved network.  The Plans explicitly caution members that if they go to a non-network provider, their benefits may be lower and they may have to pay more out of pocket.  The Plans also provide for a variety of different methodologies United may apply when determining rates for non-network services.  Plaintiffs now claim that United violated the terms of their Plans by reimbursing their non-network providers at rates permitted under the terms of the Plans, but which are lower than the rates negotiated between the providers and third-party vendors.  Plaintiffs' position is not only inconsistent with the Plans' terms, it flouts United's fiduciary duty to preserve Plan assets for the benefit of *all* participants, not just the few.

As the Supreme Court has recognized time and again, plan documents are "at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013).  Here, the Plans do not require United to pay out-of-network providers at rates those providers negotiated with third-party vendors.  Nor do the Plans require United to pay the highest rate available.  Instead, they vest United with "discretion" to resolve out-of-network claims using a menu of different methodologies, and the "***right to pay the lesser of the amount***" of available rates.  Put simply, nothing in the terms of the Plans limits

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                                    1

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

United from using an alternate methodology whether or not a negotiated rate exists, and it is within United's discretion and the scope of its duties under ERISA to do so when it would benefit the Plans.

Plaintiffs nevertheless ask the Court to read the "discretion" clauses right out of the Plans and instead interpret the Plans as *precluding* United from applying an alternate methodology whenever a negotiated rate exists. But Plaintiffs cannot write key terms out of their Plans, nor would it make sense to do so here. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) ("The statutory language [of ERISA] speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them." (quoting 29 U.S.C. § 1132(a)(1)(B))). Importantly, by affording United the discretion to utilize alternate methodologies where appropriate, the Plans enable United to keep costs down, as it is obligated to do under ERISA (*see* 29 U.S.C. § 1104(a)(1)(A)(ii)), thereby ensuring the availability of plan assets for *all* members and beneficiaries. Plaintiffs' suggestion that United should be required to use only the most expensive form of reimbursement methodology available under the Plans turns this core principle on its head, and leaves the Plans beholden to rates negotiated by out-of-network providers and third-party vendors. This outcome is plainly not within the terms of the Plans, nor is it contemplated under ERISA. Plaintiffs' benefits claim fails as a matter of law and should be dismissed with prejudice.

Additionally, although Plaintiffs purport to bring claims based on three distinct causes of action, the only injury they allege is the purported underpayment of benefits. Plaintiffs' first claim, brought pursuant to ERISA Section 502(a)(1)(B), necessarily fails because Plaintiffs cannot establish that any benefits are due to them under the terms of their respective Plans, and their proffered interpretation of the Plans is wrong. Plaintiffs' second and third causes of action request an injunction and other "appropriate equitable relief" under ERISA Section 501(a)(3). But Plaintiffs do not support these claims with any unique facts or theories of harm to establish that their alleged injury cannot be adequately remedied under Section 501(a)(1)(B). And labels aside, the "equitable" relief they seek is nothing more than the recovery of benefits allegedly due.

Plaintiffs also lack Article III standing to seek prospective injunctive relief as their claims are based only upon past denials of benefits; Plaintiffs do not allege any risk of future injury, and thus their claim for prospective injunctive relief should be dismissed under Federal Rule 12(b)(1).

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                    2

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

These deficiencies plagued Plaintiffs' original Complaint and are likewise fatal to the nearly-identical Amended Complaint. For the reasons identified herein, Plaintiffs' Amended Complaint should be dismissed in full with prejudice.

## II.    BACKGROUND

Plaintiffs Davis and Lockhart are both members of self-funded employer-sponsored health plans administered by United HealthCare Services, Inc.—the Target and Jacobs Plans, respectively. First Amended Complaint ("FAC") ¶¶ 16, 18. Plaintiff Koohns is a member of the MS&G Plan, a plan insured by UnitedHealthcare of Washington, Inc. *Id.* ¶ 17. All of these Plans are governed by ERISA.

Plaintiffs allege that they received services from providers who are not in United's network—meaning that the providers do not have direct contracts with United, and thus have not negotiated a rate agreement directly with United. *Id.* ¶ 33, 57, 91–92. Both Plaintiffs Davis and Koohns received the medical services raised in the Amended Complaint from the Seattle Spine Institute PLLC ("SSI") (*id.* ¶¶ 32, 57), and Plaintiff Lockhart received the relevant services from a Florida-based, non-network provider, the Surgery Center of Viera, LLC ("SCV") (*id.* ¶ 91).[1]

Plaintiffs' Plans provide that United may look to a variety of methodologies to determine the amounts that will be paid to non-network providers like SSI and SCV for covered services rendered to Plan members. The payment methodology at issue is United's "Shared Savings Program," in which Plan members may have access to "non-Network providers who have agreed to discounts negotiated from their charges on certain claims." *See* Stalinski Decl., Ex. 1 at p. 4; Ex. 2 at p. 7.[2] Through the Shared Savings Program, United contracts with third-party vendors like Multiplan and PMCS, which in turn negotiate rates with various non-network providers (like Plaintiffs' providers, SCV and SSI). FAC ¶¶ 33, 93. Those vendors then provide United access to the rates they negotiated with the providers. Sometimes, these vendor-negotiated rates are the best rates available for the providers' services, and it would be in the best interest of the Plan to use them, but often, these rates are much

---

[1] SCV is a serial litigant, having filed at least 39 lawsuits in courts throughout Florida against health insurers and claim administrators seeking to obtain out-of-network reimbursements in excess of plan terms. Plaintiff Lockhart's counsel—Jeffrey L. Greyber—typically represents SCV in those lawsuits.

[2] The plan documents are the subject of Defendants' concurrently filed Request for Judicial Notice.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

3

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

higher than other rates for the services that the Plans permit United to use (*e.g.*, Medicare rates).  For this reason, the Plans provide United discretion ***not*** to use rates from the Shared Savings Program, and instead to use a rate amount determined exclusively by United.  Without such discretion, plans like Plaintiffs' Plans would be beholden to the outcome of third-party vendor negotiations, and forced to pay unreasonably high rates for services if the vendor struck a bad deal.  Fortunately, the Plans protect against such an outcome.  For instance, in the definition of "Shared Savings Program" in the Glossary of key terms, Plaintiff Lockhart's and Plaintiff Davis's Plans provide the following:

> Sometimes Plan provisions or administrative practices supersede the scheduled rate, and a different rate is determined by UnitedHealthcare.  This means, when contractually permitted, ***the Plan may pay the lesser of the Shared Savings Program discount <u>or an amount determined by the Claims Administrator [United]</u>***, such as a percentage of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market, an amount determined based on available data resources of competitive fees in that geographic area, a fee schedule established by a third party vendor or a negotiated rate with the provider.

Stalinski Decl., Ex. 1 at p. 130; Ex. 2 at p. 146 (emphasis added).

The Plans also vest United with discretion to decide how "Eligible Expenses"—*i.e.*, expenses eligible for coverage—will be determined and covered for non-network services, if at all, in the "Non-Network Benefits" provisions of the "Eligible Expenses" sections of the Plans:

**<u>Target Plan (Plaintiff Davis)</u>**

"When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.

- If rates have not been negotiated, then one of the following amounts:

  o Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS)...

  o When a rate is not published by CMS for the service, UnitedHealthcare uses an available gap methodology to determine a rate for the service…

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                4

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

   o When a rate is not published by CMS for the service and a gap methodology does not apply to the service, the Eligible Expense is based on 50% of the provider's billed charge."

Stalinski Decl., Ex. 1 at p. 7.

### Jacobs Plan (Plaintiff Lockhart)

"When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.

- If rates have not been negotiated, then one of the following amounts applies based on the claim type:
  - o For Covered Health Services provided by a facility or certain ancillary providers, Eligible Expenses are determined based on a methodology developed by UnitedHealthcare or UnitedHealthcare's vendor which calculates the non-Network provider's reimbursement by utilizing, when available: CMS data for hospitals and other facilities and providers to identify the cost structure for those providers and services in a similar category to determine the national median rate which is adjusted…
  - o For Covered Health Services provided by a professional or certain ancillary providers, Eligible Expenses are determined based on a methodology developed by UnitedHealthcare or UnitedHealthcare's vendor which calculates the non-Network provider's reimbursement by utilizing: The vendor's database of recently-available national private professional and ancillary provider claims data...
  - o For Covered Health Services provided by laboratory or durable medical equipment providers, Eligible Expenses are determined based on a methodology developed by UnitedHealthcare or UnitedHealthcare's vendor which calculates the non-Network provider's reimbursement by utilizing the median amount negotiated with Network providers for the same type of equipment or service in the same CMS locality."

Stalinski Decl., Ex. 2 at pp. 10–11.

### MS&G Plan (Plaintiff Koohns)

"When Covered Health Care Services are received from an out-of-Network provider, Allowed Amounts are determined, based on:

- Negotiated rates agreed to by the out-of-Network provider and either us or one of our vendors, affiliates or subcontractors.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM   5

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

- If rates have not been negotiated, then one of the following amounts:
  - Allowed Amounts are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market…
  - When a rate is not published by CMS for the service, we use an available gap methodology to determine a rate for the service…."

Stalinski Decl., Ex. 3 at p. 33.

Furthermore, all three Plans also expressly incorporate certain of United's reimbursement policies. For instance, the Plans provide that "Eligible Expenses" (or "Allowed Amounts," in the case of the MS&G Plan) are determined "solely in accordance" with United's "reimbursement policy guidelines." *See* Stalinski Decl., Ex. 1 at p. 7; Ex. 2 at p. 10; Ex. 3 at p. 32. As relevant here, United's "Policy for Out-of-Network Providers Contracted with a Third-Party Network Vendor"—such as SSI and SCV—states: "***When processing an out-of-network claim, [United] reserves the right to pay the lesser of the amount in your third-party network vendor contract or an amount consistent with United's benchmark standards***."[3] FAC ¶ 117.

Various other provisions in all three Plans also provide United discretion to choose among different methodologies to pay non-network providers like SSI and SCV, and that United can choose ***not*** to use rates negotiated by Multiplan and PMCS. In both Plaintiff Davis's and Plaintiff Lockhart's Plans, that discretion is specified in the Non-Network Benefits provisions quoted above: "eligible expenses are determined, based on… Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, ***at UnitedHealthcare's discretion***." Stalinski Decl., Ex. 1 at p. 7 (emphasis added); Ex. 2 at p. 10. The Plans also confirm that UnitedHealthcare has "the discretion and authority to decide… how the Eligible Expenses will be determined and otherwise covered under the plan." Stalinski Decl., Ex. 1 at p. 7; Ex. 2 at p. 10. Plaintiff Koohns's MS&G plan states that United has "discretionary authority to interpret the terms of the plan and to determine eligibility for benefits." Stalinski Decl., Ex. 3 at XXIII. It also

---

[3] This policy is one of the subjects of Defendants' concurrently filed Request for Judicial Notice.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

6

states that the amount paid to non-network providers is the "amount [United] determine[s] that [United] will pay for Benefits." *Id.* at p. 32.

Although using its discretion not to pay a vendor-negotiated rate may expose members who seek out-of-network services to greater out-of-pocket costs, the Plans expressly warn members that this may happen when they choose care from a non-network provider. The Plans advise members that "when you receive Covered Health Services from a Network provider, you pay less than you would if you receive the same care from a non-Network provider." Stalinski Decl., Ex. 1 at p. 5; Ex. 2 at p. 8. The Plans also explain to members that when seeing a non-network provider, they are "required to pay the amount that exceeds the Eligible Expense," which "could be significant." Stalinski Decl., Ex. 1 at p. 5, Ex. 2 at p. 8. If the Plans were not designed in this way, it would be considerably more challenging to keep Plan costs down to keep the plan solvent to cover costs for all members and contain the cost of premiums.

Contrary to this Plan language, and the reimbursement policies expressly incorporated into the Plans, Plaintiffs assert that United was obligated to use *only* vendor-negotiated rates, to the exclusion of any other methodology. FAC ¶¶ 45, 62, 79, 104. Because United used methodologies based on Medicare rates rather than a vendor-negotiated rate to calculate Eligible Expenses for Plaintiffs' various claims, Plaintiffs maintain that their providers were under-reimbursed in violation of the terms in their respective Plans. *Id.* Notably, however, Plaintiffs do not allege that they have paid any additional amounts to their providers out-of-pocket, nor do they allege that their providers have billed them for the difference between the amount United paid and the amount their provider billed.

In the Amended Complaint, Plaintiffs bring three causes of action: (1) a claim for underpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), (2) a claim for injunctive relief under 29 U.S.C. § 1132(a)(3)(A), and (3) a claim for "appropriate equitable relief" pursuant to 29 U.S.C. § 1132(a)(3)(B). *Id.* ¶¶ 138, 142, 144. Counts II and III merely "re-allege[] and incorporate[] by reference" the factual allegations supporting Count I—the alleged underpayment of benefits owed by the Plans. *Id.* ¶¶ 141, 143. The Amended Complaint fails to cure any of the deficiencies that doomed

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                    7

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

the original Complaint, and for the reasons discussed herein, each of these causes of action should be dismissed with prejudice.

### III.    LEGAL STANDARD

A complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Forsman v. Port of Seattle*, No. 21-867-RSM, 2021 WL 4476866, at *1 (W.D. Wash. Sept. 30, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, plaintiffs must plead factual allegations that are sufficient to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss." *Rodriguez v. Prudential Ins. Co. of Am.*, No. 18-5674-RBL, 2019 WL 1040406, at *1 (W.D. Wash. Mar. 5, 2019).  The court is also not required to accept as true a "'legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"Interpretation of an insurance contract is a matter of law," suitable for adjudication through a motion to dismiss. *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1011 (W.D. Wash. 2004), *aff'd*, 144 F. App'x 600 (9th Cir. 2005) (citation omitted); *see also Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441–42 (9th Cir. 1990) (affirming dismissal of ERISA claim based on unambiguous plan term); *Fortier v. Anthem*, No. 20-56361, 2021 WL 5277099, at *1 (9th Cir. Nov. 12, 2021) (same); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1082 (10th Cir. 2004) ("In interpreting the terms of an ERISA plan, we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law." (quotation and alteration omitted)).

This scrutiny at the pleadings stage serves an essential gatekeeping function, to avoid saddling defendants with expensive discovery obligations. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                                          8

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

continued litigation."); *see also Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

## IV.   ARGUMENT

### A.   Plaintiffs' Section 502(a)(1)(B) Benefits Claim (Count I).

**1.   Plaintiffs' Plans Allow United To Use One Of Several Options To Pay Out-Of-Network Claims, So Their Claim For Benefits That Is Premised On The Required Use Of Multiplan Contracts Must Fail.**

Plaintiffs maintain that their Plans require United to determine their benefits exclusively using rates negotiated between Multiplan and/or PMCS and their non-network providers, and that United's decision to use an alternate methodology to decide these rates denied Plaintiffs benefits due under the Plans.  But Plaintiffs' interpretation of United's obligations under the Plans is contradicted by the unambiguous terms of the Plans themselves, which provide that if a negotiated rate exists, United may—***but is not required to***—use that rate to determine "Eligible Expenses."  *See supra* at pp. 4–6. The Plans contain no language limiting United's discretion to use any of the available methodologies to pay non-network claims.  To the contrary, the Plans vest United with broad discretion to choose among different methodologies to pay non-network providers, affording United the flexibility necessary to operate the Plans so as to save money for the Plans and their members as a whole, thereby assuring the long-term stability of the Plans for ***all*** beneficiaries.  Because Plaintiffs' interpretation of the Plans runs counter to the plain language of the Plans themselves—as well as basic principles of logic and contract interpretation—the benefits claims should be dismissed with prejudice.

"To state a claim for benefits under ERISA, plan participants and beneficiaries must plead facts making it plausible that a provider owes benefits under the plan."  *A.H. v. Microsoft Corp. Welfare Plan*, No. 17-1889-JCC, 2018 WL 2684387, at *2 (W.D. Wash. June 5, 2018) (citing 29 U.S.C. § 1132(a)(1)(B); *Iqbal*, 556 U.S. at 677).  "In construing an ERISA plan, courts must apply contract principles derived from state law … guided by the policies expressed in ERISA and other federal labor laws."  *Sorger v. Novartis Corp.*, No. 20-15224, 2021 WL 3758280, at *3 (9th Cir. Aug. 25, 2021).   (quotations omitted).  The Supreme Court has "recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims," which is what Plaintiffs bring here.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                        9

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013).  That is because ERISA's statutory scheme is "built around reliance on the face of written plan documents."  *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995).  Accordingly, a Section 502(a)(1)(B) claim necessarily fails where, as here, a plaintiff asks the court to alter, rather than enforce, the terms of a plan.  *See CIGNA Corp.*, 563 U.S. at 436.

### a. The Plans Expressly Confer Discretion On United To Choose Between A Negotiated Rate Or An Alternate Methodology.

A "contract must be interpreted as a whole such that every term in the contract is given effect and force."  *Cutter & Buck*, 306 F. Supp. 2d at 1011.  As a result, "[i]nterpretations that contradict and thereby nullify clauses within the contract are disfavored," as are "interpretations that would result in a term being superfluous or duplicative[.]"  *Id.*; *see also Ashley v. Prudential Ins. Co. of Am.*, No. 10-518, 2011 WL 1467819, at *11 (E.D. Va. Apr. 18, 2011) (ERISA plan may not be interpreted in such a way as "would effectively render [certain] provisions a nullity").  These same rules apply to insurance policies, which "are to be construed as contracts."  *Herzog v. Prop. & Cas. Ins. Co. of Hartford*, No. 16-5083-KLS, 2016 WL 6997083, at *4 (W.D. Wash. Nov. 30, 2016) (quotations omitted).

Applying these principles, Plaintiffs' theory that United must use vendor-negotiated rates whenever one exists must be rejected because it contradicts and would nullify key terms vesting United with discretion to choose among negotiated rates or other Plan-approved rates to determine Eligible Expenses.  All three Plans give United "discretion" to determine the rates it will pay non-network providers.  *See, e.g.*, Stalinski Decl., Ex. 1 at  p. 7; Ex. 2 at p. 10; Ex. 3 at p. 32; *see also supra* at pp. 4–6.  If United is obligated to use negotiated rates whenever available, there is no opportunity to exercise the "discretion" granted by the Plans, which is also vital for the efficient functioning and long-term vitality of these ERISA Plans.  *See Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir. 1996), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc) ("[A] proper and efficient functioning of an ERISA plan does often depend upon the use of discretion by the plan fiduciaries.").

Provisions of the Target and Jacobs Plans, for instance, specifically allow United to **decline** to apply vendor contracted rates, explaining that "where contractually permitted," United "**may pay the**

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                                        10

***lesser of the Shared Savings Program discount [i.e., the vendor-negotiated rate] <u>or an amount</u>*** <u>***determined by***</u>***" United***. Stalinski Decl., Ex. 1 at p. 130; Ex. 2 at p. 146 (emphasis added). Plaintiffs' theory would read these terms entirely out of the Plans. It is noteworthy that Plaintiffs never cite to or address these terms in their Amended Complaint, and instead argue that United's ability to pay the lesser of the two amounts stems only from "an internally adopted guideline that…is inconsistent with the written plan terms." FAC ¶¶ 116–19. But as this Plan language shows, Plaintiffs are wrong; this discretionary language comes straight from the Plans themselves.

Because Plaintiffs' interpretation of the Plans would contradict and thereby nullify numerous provisions in the Plans expressly vesting United with discretion to choose an appropriate reimbursement methodology, their interpretation of the Plans should be rejected. *Cutter & Buck*, 306 F. Supp. 2d at 1011; *Ashley*, 2011 WL 1467819, at *11.

### b. The Plan Language Upon Which Plaintiffs Rely Does Not Require United To Exclusively Use Multiplan/PMCS Rates.

Plaintiffs' theory that United ***must*** use only negotiated rates where such a rate exists also rests on flawed logic and should be rejected for this reason as well. Specifically, Plaintiffs contend that the "'if, then…' premise" in the "For Non-Network Benefits" sections of their Plans "identif[ies] that United is able to turn to the alternate methodologies, such as Medicare rates, only '[i]f rates have not been negotiated.'" FAC ¶ 31 (emphasis omitted); *see also id.* ¶¶ 62, 90. But Plaintiffs' theory depends entirely on an erroneous and logically flawed interpretation of the "Non-Network Benefits" provisions of the Plans (quoted above at pp. 4–5), to the exclusion of all other Plan provisions. Plaintiffs' strained interpretation of the Plans is unreasonable, and should be rejected by the Court as a matter of law. *See, e.g.*, *Prudential Ins. Co. of Am. v. Brimberry*, No. 13-07429, 2014 WL 3510109, at *3 (C.D. Cal. July 11, 2014).

Plaintiffs rely specifically on the "Non-Network Benefits" language in the "Eligible Expenses" sections of the Plans, which state: "If rates ***have not*** been negotiated, then one of the following [alternate] amounts" is used to calculate "Eligible Expenses." Stalinski Decl., Ex. 1 at p. 7; Ex. 2 at p. 10; Ex. 3 at p. 33. (emphasis added). Plaintiffs extrapolate from this language that the inverse must also be true by claiming that if a rate ***has*** been negotiated, then an alternate amount ***may not*** be used.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                    11

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

But as the Ninth Circuit has recognized:  "In logical terms," this argument relies upon the fallacy of "infer[ring] the inverse of a conditional from the conditional."  *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 884 (9th Cir. 2016) (citing Joseph G. Brennan, A Handbook of Logic 79–80 (2d ed. 1961)). The court further explained:

> For example, take as a given the proposition that "if it has rained, then the grass is not dry."  It does not necessarily follow that "if it has not rained, then the grass is dry." …
> ***We cannot infer the second if-then statement from the first.***

*Id.* at 885 (emphasis added).  This improper leap of logic is precisely what Plaintiffs ask the Court to make here, as shown by a comparison of the Plan terms and Plaintiffs' proposed interpretation of those terms:

> **Actual Plan Language:** "If rates have **not** been negotiated, then one of the following amounts."
>
> → *E.g.*, if **not** A, then B
>
> **Plaintiffs' Position:** "If rates have been negotiated, then **not** one of the following amounts."
>
> → *E.g.*, if A, then **not** B

Plaintiffs' position thus considers the absence of a negotiated rate as a necessary condition for the use of an alternate methodology, and where a negotiated rate exists—according to Plaintiffs— United cannot rely on alternate methodologies to calculate eligible expenses.  But the Plans include no such limit, providing instead that alternate methodologies are used "if" a negotiated rate does not exist—but not "only if" that is the case.  As the Ninth Circuit has cautioned, this "distinction between 'if' and 'only if,'… is not a mere quibble over vocabulary—it goes right to the heart of whether [certain criteria] are necessary or sufficient conditions," *i.e.*, whether application of those criteria "is mandatory or entirely discretionary."  *Carver v. Lehman*, 558 F.3d 869, 876 n.12 (9th Cir. 2009).  Here, there is no language in the Plans to suggest that the existence of a negotiated rate between a provider and Multiplan and/or PMCS requires United to use that rate, as opposed to an alternate methodology for determining an appropriate rate.  Conversely, there is ample, unambiguous Plan language, including in the reimbursement policies expressly incorporated into the Plans, reflecting that United has discretion to make determinations as to appropriate rates for non-network providers and services, as discussed further below.  *See supra* at pp. 4–6; *see also infra* at pp. 12–13.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                                    12

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

Courts have applied these rules of logic and contract interpretation in the ERISA context to rebuff the same argument Plaintiffs advance here.  For instance, in *Alquahwagi v. Shelby Enterprises, Inc.*, the parties disputed the meaning of the following plan language:  "If the amount of insurance for your Class and age at any time is more than the Non-medical Limit, you must give evidence of insurability satisfactory to Prudential before the part over the Limit can become effective."  No. 14-13691, 2016 WL 4771329, at *5 (E.D. Mich. Sept. 14, 2016).  The plaintiff argued that this language "clearly provides that an insured does not have to submit evidence of insurability if the amount of insurance is below the Non-medical Limit."  *Id.*  The court rejected this argument, explaining that the plaintiff had "confus[ed] necessary and sufficient conditions."  *Id.*  The court reasoned that "[e]lecting an amount of insurance above the Non-medical Limit is **sufficient** to trigger the requirement for evidence of insurability, but **is not necessary**."  *Id.* (emphases added).  Likewise here, "[i]f rates have not been negotiated" is a sufficient, but not a necessary, condition to using alternate methodologies.

And this use of the "if … then" language makes sense in the context of these health plans because if no rate exists in the first instance, the Plans must provide another way to calculate Eligible Expenses.  But just because alternate methodologies are used where there is no negotiated rate does not mean that United is barred from using alternate methodologies if there **is** a negotiated rate, including where United believes, in its discretion, that the use of a Medicare or other alternate rate will reduce expenses for the good of the Plan and its members as a whole.

Because Plaintiffs' core theory is based on flawed logic and cannot be reconciled with the discretionary Plan provisions addressed above, *see supra* at pp. 4–6, 10–11, Plaintiffs' Section 502(a)(1)(B) claim should be dismissed in full.

**2.  Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty (Count I).**

The remainder of Plaintiffs' Count I claim asserts that United violated "its fiduciary duty to honor written plan terms," and generally, "its ERISA fiduciary duties, including its duty of loyalty." FAC ¶¶ 139–140.  Plaintiffs fail to state a claim under either theory because, as detailed above, United honored the terms of the Plans in calculating Eligible Expenses for Plaintiffs' claims.  *See supra* at pp. 9–13; *see also Minerley v. Aetna, Inc.*, No. 13-1377, 2019 WL 2635991, at *10 (D.N.J. June 27, 2019),

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

13

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

*aff'd*, 801 F. App'x 861 (3d Cir. 2020) (agreeing with defendants' "common-sense argument that it cannot be a breach of the fiduciary duty of loyalty for an insurance company to enforce the terms of an insurance policy").  And ERISA Section 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) only permits a beneficiary to bring claims "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (characterizing Section 502(a)(1)(B) as a "relatively straightforward" provision which enables beneficiaries to bring suit to "complain[] of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan").  There can be no claims under Section 502(a)(1)(B) for breach of fiduciary duty that are not grounded in a claim for benefits—and any such claim of breach must fail for the same reason Plaintiffs' claim to benefits fails here.

**B.      Plaintiffs' Section 502(a)(3) Claims (Counts II and III)**

**1.   Plaintiffs Are Not Entitled To "Equitable Relief" Because They Fundamentally Seek Payment Of Benefits, A Remedy Already Provided By Section 502(a)(1)(B).**

Section 502(a)(3) allows claimants to obtain "appropriate equitable relief" for certain ERISA violations.  29 U.S.C. § 1132(a)(3)(B).  Its two "'catchall' provisions act as a safety net," providing for relief for violations that ERISA "does not elsewhere adequately remedy."  *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996).  Relief is therefore "not available under § 1132(a)(3) 'where Congress elsewhere provided adequate relief for a beneficiary's injury[.]'"  *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020) (quoting *Varity*, 516 U.S. at 515).  Further, "[t]o qualify as 'equitable relief,' both '(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought' must be equitable rather than legal."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019) (citing *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016)).

Because Section 502(a)(1)(B) provides an adequate remedy for "plea[s] to enforce the terms of the plan," *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1117–18 (N.D. Cal. 2018), a plaintiff "may not bring a claim for denial of benefits under § 1132(a)(3)," *Castillo*, 970 F.3d at 1229.  A plaintiff is similarly barred from using Section 502(a)(3) to obtain a "remedy for breaches of

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM                                          14

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

fiduciary duty with respect to the interpretation of plan documents and the payment of claims," which Section 502(a)(1)(B) "specifically provides" for. *Varity*, 516 U.S. at 512. Thus, where, as here, plaintiffs bring a Section 502(a)(3) claim for equitable relief based only on allegedly improper denials of benefits, they fail to state a claim upon which relief can be granted. *See, e.g., Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1165 (W.D. Wash. 2014) (Martinez, C.J.) ("Because Plaintiff's Complaint seeks monetary damages for past and future LTD benefits, equitable relief is not available."); *Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1238 (W.D. Wash. 2013) (same).[4]

Plaintiffs' Section 502(a)(3) claims merely incorporate by reference the allegations from their legal claim in Count I and make no distinct allegations of any kind. FAC ¶¶ 141–44. Plaintiffs do not point to harm beyond the purported underpayment of benefits, nor do they allege facts establishing a breach of fiduciary duty distinct from United's handling of their benefits claims. *See Fortier*, 2021 WL 5277099, at *1 (affirming dismissal of Section 502(a)(3) claim where it was "only superficially distinct from her claim for a denial of benefits"; equitable prayer was based on same wrongdoing as 502(a)(1)(B) claim and plaintiff made no plausible allegation of breach of fiduciary duty apart from denial (quotations omitted)).

The "equitable" relief sought by Plaintiffs further reveals the deficiencies of their Section 502(a)(3) claims. Plaintiffs ask the Court to enjoin United "from engaging in the misconduct described herein," and for disgorgement, restitution, and/or "payment of an appropriate surcharge as necessary to make Class Members whole." FAC ¶ 144. At bottom, Plaintiffs seek to recover what they allege are benefits due under the terms of their Plans. But, "'[a]lmost invariably suits seeking … to compel the defendant to pay a sum of money to the plaintiff are suits for money damages'—the 'classic form of *legal* relief.'" *Depot*, 915 F.3d at 661 (brackets, emphasis, and ellipses in original) (quoting *Great-*

---

[4] *See also, e.g.*, *Smith v. Cigna Health & Life Ins. Co.*, No. 20-624, 2020 WL 5834786, at *6 (D. Or. Sept. 30, 2020) (dismissing Section 502(a)(3) claim where "same allegation" "that Cigna breached its fiduciary duties by failing to reimburse him for P.S.'s therapies as Smith alleges the plan's terms required Cigna to do" supported both Section 502(a)(1)(B) and (a)(3) claims); *Ehrlich v. Hartford Life & Accident Ins. Co.*, No. 20-2284, 2021 WL 4472845, at *4 (N.D. Cal. May 7, 2021) (dismissing Section 502(a)(3) claim where complaint did "not identify any injury beyond the nonpayment of benefits").

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

15

*W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)).  Because Section 502(a)(1)(B) provides Plaintiffs an adequate remedy for their alleged injury, Counts II and III should be dismissed.

### 2. Plaintiffs Have Not Alleged Facts Sufficient To Support Their Theory That United Breached Any Fiduciary Duty.

Plaintiffs' 502(a)(3) claims must also be dismissed because Plaintiffs have not stated, and cannot state, a claim for breach of fiduciary duty.  Plaintiffs' only theory of breach that does *not* directly duplicate their claim for benefits (and which is therefore barred as described, *supra* at p. 14) is that United had a fiduciary obligation—separate from the terms of the Plans—to select a methodology that resulted in the highest reimbursement for claimants, like Plaintiffs, who seek out-of-network care, and that United breached the duty of loyalty by electing a less expensive methodology.

At its core, this argument is that paying a lower rate for services, when a higher rate is available, is *per se* a breach of fiduciary duty.  But to the contrary, where, as here, a plan affords an administrator "more than one method for calculating benefits," the administrator is not obligated to exercise its discretion to "select the option most favorable to the insured."  *See Tuttle v. Varian Med. Sys. Inc. Med. Plan Adm'r*, No. 12-01424, 2014 WL 4977681, at *6 (D. Ariz. Sept. 19, 2014).  Instead, United's alleged conduct is fully consistent with its fiduciary obligation to preserve Plan assets for the benefit of **all** participants.  *See* 29 U.S.C. § 1104(a)(1)(A)(ii); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985) ("One of the fundamental common-law duties" imposed on ERISA fiduciaries is "to preserve and maintain trust assets."); *McCabe v. Cap. Mercury Apparel*, 752 F. Supp. 2d 396, 410–11 (S.D.N.Y. 2010) ("[I]n order to promote ERISA's goal of protecting employee benefits, the statute explicitly charges fiduciaries with 'defraying reasonable expenses of administration' as part of the duty of loyalty." (quoting 29 U.S.C. § 1104(a)(1)(A)(ii))).  Accordingly, United does not act disloyally simply because it exercises its discretion in a manner that results in a Plan retaining, as opposed to paying out, funds.  *See Sargent v. S. California Edison 401(k) Sav. Plan*, No. 20-1296, 2021 WL 347689, at *8 (S.D. Cal. Feb. 2, 2021) ("Plaintiff does not demonstrate how the claim and appeal denials—in [and] of themselves—undermined Defendants' duty of loyalty to act in Plaintiff's interest or benefit[.]").

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

16

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

### 3. Plaintiffs Lack Article III Standing To Pursue An Injunction Or Other Prospective Relief Because They Have Not Alleged A Risk Of Future Harm.

The Supreme Court has consistently held that to demonstrate Article III standing for injunctive relief—a prospective remedy—a plaintiff must face a threat of injury that is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Mere "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (quotation marks omitted). And as courts in this district recognize, "[n]either injunctive nor declaratory relief may be premised on past injury." *Schumacher v. Inslee*, 474 F. Supp. 3d 1172, 1175 (W.D. Wash. 2020). Unsurprisingly, "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank*, 140 S. Ct. 1615, 1622 (2020).

Adhering to these well-established principles, courts in this Circuit dismiss claims for injunctive relief where the only injury alleged is limited to *past* denials of benefits, but the claims for injunctive relief concern only future, speculative benefits. For instance, in *Delgado v. ILWU-PMA Welfare Plan*, the court found standing not satisfied because the claims for injunctive relief concerned "future benefits" and thus "the alleged injury [wa]s hypothetical or speculative." No. 18-5539, 2018 WL 8014336, at *3 (C.D. Cal. Nov. 20, 2018). The court explained:

> The complaint alleges that patients will seek medical services from providers—which has not happened—and that the Plan will deny the resulting claims—which has not happened—and that the Plan will use unlawful practices in denying those benefits— which has not happened. ***Any future denial of a claim by the Plan is by definition hypothetical, as those claims have not—indeed, cannot—be filed until the medical services are rendered.*** This Court will not assume the Plan will engage in misconduct.

*Id.* (emphasis added); *see also Bellanger v. Health Plan of Nevada, Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (plaintiff could not show immediate irreparable harm based on "unlikely" series of events that he would "submit a claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law").

In the instant case, despite having already amended their complaint, Plaintiffs only allege injury stemming from United's reimbursement of ***past*** claims—they do not even go so far as *Delgado* plaintiffs to allege future injuries, which would be hypothetical and speculative, in any event. *See, e.g.*, FAC ¶¶ 42–45 (challenging United's reimbursement of claims stemming from Davis's May 27, 2020

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

17

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

injection services); *id.* ¶¶ 58–61 (Koohns's April 18, 2019 and September 12, 2019 office visits); *id.* ¶¶ 73, 79–80 (Koohns's October 21 and 23, 2019 surgeries); *id.* ¶¶ 96, 104 (Lockhart's April 15, 2020 surgery). Nowhere do Plaintiffs assert that they plan to return to these providers for future procedures, let alone that United would fail to use Plaintiffs' preferred rate to reimburse them for such a hypothetical future procedure. That would "surely [be] no more than speculation." *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983). Since Plaintiffs have not alleged any "real and immediate" risk of future harm, they lack Article III standing to seek injunctive or other prospective relief, and their claims for this relief should be dismissed, with prejudice. *Id.* at 102.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety for failure to state a claim upon which relief can be granted.

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

18

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP

DATED: January 28, 2022

By: **/s/ Heather L. Richardson

GIBSON, DUNN & CRUTCHER LLP

Heather L. Richardson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  +1 213.229.7409
Facsimile:  +1 213.229.6409
E-mail:  HRichardson@gibsondunn.com

Lauren M. Blas (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  + 1 213.229.7503
Facsimile:  +1 213.229.6503
Email:  LBlas@gibsondunn.com

LANE POWELL PC
s/Erin M. Wilson
Barbara J. Duffy, WSBA No. 18885
Erin M. Wilson, WSBA No. 42454
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
duffyb@lanepowell.com
wilsonem@lanepowell.com

*Attorneys for Defendants*

Defendants' Motion to Dismiss
Case No. 2:21-CV-01220-RSM

19

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Gibson, Dunn &
Crutcher LLP