1
2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3
4
5

RICK DAVIS, SR., MATHEW KOOHNS, and
BRETT A. LOCKHART, SR., individually and
on behalf of all others similarly situated,

Case No.  2:21-cv-01220-RSM

6

Plaintiffs,

7

v.

ORAL ARGUMENT REQUESTED

8
9

UNITED HEALTH GROUP
INCORPORATED, *et al.*,

Defendants.

10

11
12

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

13
14
15
16
17

D. Brian Hufford, Esq. (*pro hac vice*)
Jason S. Cowart, Esq. (*pro hac vice*)
**Zuckerman Spaeder LLP**
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com

18
19
20
21

Andrew N. Goldfarb, Esq. (*pro hac vice*)
**Zuckerman Spaeder LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
agoldfarb@zuckerman.com

Eleanor Hamburger (WSBA #26478)
**Sirianni Youtz**
**Spoonemore Hamburger PLLC**
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com

Jeffrey L. Greyber, Esq. (*pro hac vice*)
**Callagy Law, P.C.**
1900 N.W. Corporate Blvd., Suite 310W
Boca Raton, FL 33431
Tel. (561) 405-7966
jgreyber@callagylaw.com

22
23
24
25

Meiram Bendat, Esq. (*pro hac vice*)
**Psych-Appeal, Inc.**
7 West Figueroa Street, Suite 300
Santa Barbara, CA 93101
Tel. (310) 598-3690, ext. 101
mbendat@psych-appeal.com

26

*Counsel for Plaintiffs and the Putative Class*

PLS.' OPP'N TO MOT.
TO DISMISS FAC

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 5

ARGUMENT ......................................................................................................... 9

    I.      LEGAL STANDARD .................................................................................... 9

    II.    PLAINTIFFS HAVE PLAUSIBLY ALLEGED THAT UNITED'S INTERPRETATION OF THE VENDOR CONTRACT PLANS WAS UNREASONABLE .......................................................................................... 11

           A.    Plaintiffs Plausibly Allege a Reasonable Interpretation of the ONET Reimbursement Provision ........................................................ 11

           B.    United's Interpretation of the ONET Reimbursement Provision Is Inconsistent with the Plain Language of That Written Term ................... 12

           C.    United's Interpretation of Vendor Contract Plans Is Unreasonable Because It Depends on Irrelevant Plan Terms and Is Inconsistent with Its ERISA Fiduciary Duties ............................................................. 15

           D.    United Improperly Relies on an Internal Policy That Is Inconsistent with the Written Terms of the Vendor Contract Plans and Violates United's Fiduciary Duties ........................................................................ 17

    III.   PLAINTIFFS PLAUSIBLY PLEAD FACTS TO SUPPORT THEIR CLAIMS UNDER § 502(a)(3) ...................................................................... 19

           A.    Controlling Ninth Circuit Authority Compels Denial of United's Motion to Dismiss Plaintiffs' Non-Duplicative § 502(a)(3) Claims ..... 20

           B.    Plaintiffs May Seek All Relief Available under § 502(a)(3) ................. 21

CONCLUSION ...................................................................................................... 22

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 9

*Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*,
958 F. Supp. 2d 1223 (W.D. Wash. 2013) ............................................................ 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 9

*Black v. Long Term Disability Ins.*,
373 F. Supp. 2d 897 (E.D. Wis. 2005) .................................................................. 21

*Cherry v. Prudential Insurance Co. of America*,
2021 WL 2662183 (W.D. Wash. June 29, 2021) .................................................. 21

*Cigna Corp. v. Amara*,
563 U.S. 421 (2011) .............................................................................................. 20

*Cinelli v. Sec. Pac. Corp.*,
61 F.3d 1437 (9th Cir. 1995) ................................................................................ 10

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ................................................................................ 9

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 74 (1995) ................................................................................................ 10

*Cutter & Buck, Inc. v. Genesis Ins. Co.*,
306 F. Supp. 2d 988 (W.D. Wash. 2004) ........................................................ 10, 14

*Egert v. Conn. Gen. Life Ins. Co.*,
900 F.2d 1032 (7th Cir. 1990) ............................................................... 4, 10, 11, 18

*Hancock v. Aetna Life Ins. Co.*,
251 F. Supp. 3d 1363 (W.D. Wash. 2017) ........................................................... 21

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
555 U.S. 285 (2009) ................................................................... 4, 10, 15, 18

*Meidl v. Aetna, Inc.*,
346 F. Supp. 3d 223 (D. Conn. 2018) .................................................................. 18

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

*Moyle v. Liberty Mutual Retirement Benefit Plan*,
    823 F.3d 948 (9th Cir. 2016).................................................................. 20, 21

*Nielsen v. Unum Life Insurance Co. of America*,
    58 F. Supp. 3d 1152 (W.D. Wash. 2014) ..................................................... 21

*Padfield v. AIG Life Ins. Co.*,
    290 F.3d 1121 (9th Cir. 2002)........................................................................ 10

*Poisson v. Aetna Life Ins. Co.*,
    488 F. Supp. 3d 942 (C.D. Cal. 2020) ........................................................... 21

*Prolow v. Aetna Life Ins. Co.*,
    2022 WL 263165 (S.D. Fla. Jan 27, 2022) .................................................... 11

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011).......................................................................... 9

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003)......................................................................... 15

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,
    85 F.3d 455 (9th Cir. 1996).......................................................................... 10

*Silva v. Metro. Life Ins. Co.*,
    762 F.3d 711 (8th Cir. 2014)......................................................................... 20

*Smith v. Cigna Health & Life Ins. Co.*,
    2020 WL 5834786 (D. Or. Sept. 30, 2020).................................................... 21

*Smith v. Cigna Health & Life Ins. Co.*,
    2021 WL 1895234 (D. Or. May 11, 2021) ..................................................... 21

*Smith v. Health Servs. of Coshocton*,
    314 F. App'x 848 (6th Cir. 2009) .................................................................. 11

*White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*,
    2011 WL 2531193 (N.D. Cal. June 24, 2011) ............................................... 11

*Wit v. United Behavioral Health*,
    2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) ................................................. 18

*Wit v. United Behavioral Health*,
    2020 WL 6479273 (N.D. Cal. Nov. 3, 2020).................................................. 22

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

**Statutes**

29 U.S.C. § 1022(a)(1) ............................................................................. 10

29 U.S.C. § 1104 ....................................................................... 4, 16, 17, 19

29 U.S.C. § 1132(a)(1)(B) ........................................................ 4, 20, 21, 22

29 U.S.C. § 1132(a)(3) .................................................. 4, 5, 19, 20, 21, 22

**Rules**

Fed. R. Civ. P. 8 ........................................................................................ 4

Fed. R. Civ. P. 8(a)(3) ............................................................................. 21

PLS.' OPP'N TO MOT.
TO DISMISS FAC – iv

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

**INTRODUCTION**

Plaintiffs Rick Davis, Sr. ("Davis"), Mathew Koohns ("Koohns"), and Brett A. Lockhart, Sr. ("Lockhart," and together with Davis and Koohns, "Plaintiffs"), have plausibly alleged that Defendants United Health Group Incorporated, UnitedHealthcare Insurance Company, UnitedHealthcare of Washington, Inc., and UnitedHealthcare Services, Inc. (collectively, "United") interpreted their plans' written terms unreasonably. Indeed, United's proffered interpretation—that the plans' written terms give United unfettered discretion over the methodology to use in determining how much to reimburse for out-of-network healthcare services—is inherently unreasonable. Not only does it require the Court to ignore or re-write the written plan terms that directly address this question, it completely disregards Plaintiffs' allegations—which United does not address, much less dispute—that United interpreted the plans as it did, and acted as it did, as part of a larger effort to enrich itself at the expense of plan participants like Plaintiffs. These allegations easily make United's liability plausible—which is all that is required to defeat United's motion to dismiss (ECF No. 29 ("Mot.")).

United does not dispute, and therefore concedes, that in their First Amended Complaint ("FAC") (ECF No. 28) Plaintiffs plausibly allege that: (i) Plaintiffs are members of health-care plans administered by United that are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); (ii) Plaintiffs received care from out-of-network providers that had agreements ("vendor contracts") with third-party "rental" networks, including MultiPlan and PMCS, to provide services at agreed-upon rates, to accept those rates as payment-in-full, and to not "balance-bill" Plaintiffs; (iii) United had entered into contracts with those third-party networks to make Plaintiffs' providers (and other out-of-network providers) available to participants in Plaintiffs' plans ("Plans" or "Vendor Contract Plans") at those negotiated rates, such that those

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

third-party networks were "vendors" under the terms of Plaintiffs' Plans; (iv) United did not apply those negotiated rates to claims for services provided to Plaintiffs by providers; and (v) the internal policy that United relied upon to disregard the vendor contracts is not a plan document and is inconsistent with the written terms of the Vendor Contract Plans.

United also does not challenge, and therefore concedes, that Plaintiffs have plausibly alleged that United's misinterpretation of the Vendor Contract Plans' written terms reflected, and was motivated by, United's desire to increase its profits. Through its purposeful, organized initiative to pay providers less regardless of the written promises made in the Plans, United increased the "savings" fee it charged its plan sponsor clients. And United does not challenge, and therefore concedes, that Plaintiffs have adequately alleged that by ignoring the vendor contracts, United exposed Plaintiffs to a balance-billing risk that did not exist under the vendor contracts.

Rather than addressing any of these allegations, United argues that the Vendor Contract Plans' written terms—coupled with a separate, internal policy (the "United Internal ONET Policy") that is not a plan document—allowed it to do whatever it wants. United is wrong as a matter of law: no matter how much discretion it was given under its ERISA plans, United cannot violate its ERISA fiduciary duties by exercising that discretion to advance its own economic interests over the interests of Plaintiffs, as Plaintiffs have alleged.

United is also wrong as a matter of basic ERISA contract interpretation. United's argument that the Plans' written terms give United an undifferentiated menu of reimbursement methodologies is inconsistent with the express, unambiguous written terms of the Plans and ERISA's statutory scheme, which is built upon the centrality of those written plan terms.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

As alleged in the FAC, each of the Vendor Contract Plans has a specific term (the "ONET Reimbursement Term") that explicitly sets out a binary, "either/or" hierarchy in deciding how the Plan will reimburse benefit claims "[w]hen Covered Health Services are received from a non-Network provider." The ONET Reimbursement Term first states that out-of-network reimbursement amounts (called "Eligible Expenses" or "Allowed Amount") "are based on *either* of the following" two methodologies. It then sets out the two methodologies. The first requires payment of the "negotiated rate agreed to by the non-Network provider" and United or a United "vendor." Only if such an agreed-upon negotiated rate does not exist does a Vendor Contract Plan turn to a separate and distinct second methodology. In particular, the ONET Reimbursement Term then states: "*If rates have not been negotiated*, *then*" a different methodology will be used to determine the payable amount (emphasis added). Thus, the Vendor Contract Plans "either/or" reimbursement hierarchy is reinforced by a clear "if/then" dichotomy: *if* there is no negotiated rate with United or a United vendor, *then* the alternative reimbursement methodology is used.

United's contrary interpretation is unreasonable. It either renders the conditional phrase ("If rates have not been negotiated, then . . .") superfluous, since according to United the Vendor Contract Plan allows United to choose the second methodology even if rates have been negotiated, or re-writes that phrase to say that the alternative methodology can be used "[e]ven if rates *have* been negotiated." Either way, the Vendor Contract Plans' actual written terms cannot be reasonably interpreted in the manner United proposes.

The other provision of the Vendor Contract Plans to which United cites—the definition of a "Shared Savings Program"—is irrelevant. Not only is that definition absent from the Miles Sand & Gravel ("MS&G") plan which covers Plaintiff Koohns, the definitions United cites from the other two Plans do not even mention or refer to the ONET Reimbursement Provision (or Eligible

PLS.' OPP'N TO MOT.
TO DISMISS FAC – 3

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Expenses or Allowed Amount), and the ONET Reimbursement Provision does not mention or refer to "Shared Savings." Accordingly, United's contention that the Shared Savings Program definition somehow modifies or supersedes the ONET Reimbursement Provision is unreasonable.

United's contention that its violation of the ONET Reimbursement Provision in the Vendor Contract Plans is permitted by the United Internal ONET Policy—pursuant to which United claims unfettered discretion to do whatever it wants—similarly fails. This internal policy directly conflicts with, and cannot alter or supersede, the plain written terms of the Vendor Contract Plans themselves. *See, e.g.*, *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009) (holding that ERISA plan administrator must act in accordance with plan documents, not external documents that "might purport to affect the dispensation of benefits"); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir. 1990) (plan administrators "cannot adopt any guidelines they choose and then rely upon these guidelines with impunity; rather, they may rely only upon those guidelines that reasonably interpret their plans"). Indeed, even if provisions of the Vendor Contract Plans or the United Internal ONET Policy ***could*** be read to give the Plans' fiduciary the type of unlimited discretion United suggests, United fails to offer any argument about how it could legally exercise that discretion to advance its own interests (generating larger fees for itself) and in a way that harms beneficiaries (because it exposes them to balance billing), as Plaintiffs have indisputably plausibly alleged. *See* 29 U.S.C. § 1104.

United's final arguments about Plaintiffs' Counts II and III, which seek in the alternative equitable relief for United's violations of ERISA and plan terms under § 502(a)(3), are also without merit. Under controlling Ninth Circuit authority and as explicitly authorized by Rule 8 of the Federal Rules of Civil Procedure, a plaintiff may plead both § 502(a)(1)(B) and § 502(a)(3) claims. United's claim that Plaintiffs have not plausibly alleged a breach of fiduciary duty is

PLS.' OPP'N TO MOT.
TO DISMISS FAC – 4

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

frivolous—at least 25 paragraphs in the FAC allege facts bearing on United's fiduciary breach. *See* FAC ¶¶ 2-3, 10-15, 71-72, 86, 113, 114-126. Indeed, the FAC plausibly explains why United's improper under-reimbursement of benefits on Plaintiffs' claims was part of a massive fiduciary breach. And because the FAC alleges that Plaintiffs continue to be participants in the same Vendor Contract Plans, they face a reasonable risk of future injury from this same conduct by United, and thus are not barred from seeking any form of equitable and injunctive relief available under § 502(a)(3).

## **FACTUAL BACKGROUND**

As noted above, United's motion rests on its interpretation of the Vendor Contract Plans. With one exception, United does not dispute that Plaintiffs have plausibly and sufficiently alleged the facts underlying their claims.[1] Thus, for the Court's convenience, Plaintiffs only briefly summarize those well-pleaded facts.

Plaintiffs are employed, and their employers promised them health insurance benefits as defined by the written terms of the Vendor Contract Plans, each of which is administered by a United entity that is a named defendant. FAC ¶¶ 15-19. Each of the Plaintiffs' Plans is governed by ERISA, and the United claims administrators are ERISA fiduciaries. *Id.* ¶¶ 28, 56, 87.

Each of the Vendor Contract Plans contain a written term that defines how the Plans will calculate benefits when Plaintiffs receive covered services from out-ot-network providers—that is, providers who do not have a direct network contract with United. *Id.* ¶¶ 30, 57, 89. More specifically, the ONET Reimbursement Provision sets out the approach by which the Vendor

---

[1] That exception—whether Plaintiffs have adequately pleaded United's breaches of fiduciary duty—is addressed *infra*.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Contract Plan will determine the "allowed amount" (a term that is interchangeable with "Eligible Expenses," *id.* ¶¶ 57, 89)—that is, how much the Vendor Contract Plan will pay in benefits for a service before any deductible, co-pay, or co-insurance obligations the plan participant may have. *Id.* ¶¶ 30, 57, 89. Although United's motion correctly quotes most of the ONET Reimbursement Provision in each of the Plaintiffs' Vendor Contract Plans, it omits the critical introductory sentence that precedes the two-bulleted provision:

> "For Non-Network Benefits, Eligible Expenses are based on ***either of*** the following:" (emphasis added).

Thus, for example, the introductory part of the ONET Reimbursement Provision in Plaintiff Davis's Plan states in full:

> **For Non-Network Benefits,** Eligible Expenses are based on either of the following:
>
> - When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:
>
>   ❖ Negotiated rates agreed to by the non-Network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, at UnitedHealthcare's discretion.
>
>   ❖ If rates have not been negotiated, then one of the following amounts:
>
>     ▪ Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic area . . .

*Id.* ¶ 30 (Target Plan); *see also id.* ¶ 57 (MS&G Plan), ¶ 89 (Jacobs Plan). The only substantive difference in the relevant parts of this provision among the three Vendor Contract Plans is that in the MS&G Plan, the first bullet concerning "negotiated rates" does not include the phrase "at UnitedHealthcare's discretion," stating instead: "Negotiated rates agreed to by the out-of-Network provider and either us or one of our vendors, affiliates or subcontractors." *Id.* ¶ 57.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Each of the Plaintiffs received healthcare services from an out-of-network provider. *Id.* ¶¶ 33, 58, 73, 92. Each of those providers had entered an agreement (a "vendor contract") with companies that create so called "rental networks." The provider for Plaintiffs Davis and Koohns, Dr. Paul Schwaegler and Seattle Spine Institute PLLC ("SSI"), contracted with both MultiPlan and PMCS. *Id.* ¶¶ 33-35. Lockhart's provider, the Surgical Center of Viera LLC in Florida ("SCV"), also contracted with MultiPlan. *Id.* ¶ 93. MultiPlan and PMCS both were United vendors under the terms of Plaintiffs' Plans. *Id.* ¶¶ 41, 72, 79. Under those vendor contracts, Plaintiffs' providers agreed to accept the negotiated rate—a percentage of their billed charges—as payment in full and not to balance bill their patients for the difference between the billed charge and the negotiated rate. *Id.* ¶¶ 33-35, 93. As such, it was in Plaintiffs' best interests to have the vendor contracts applied when processing their claims. *Id.* ¶¶ 2, 14, 46, 81, 125.

As alleged, United applied the vendor contract rates to some, but not all, of the claims that Plaintiffs submitted. For example, as to Plaintiff Davis, United set the allowed amount according to the vendor contract for certain claims. *Id.* ¶¶ 37-41. But for the benefits claims at issue in this case, United chose to disregard the vendor contract and applied an alternate methodology that resulted in a much lower reimbursement amount. Specifically:

- Plaintiff Davis received a surgical procedure for which Dr. Schwaegler billed $2,496 and SSI billed $2,981. Had the PMCS contract been used as it should have been, the allowed amount would have been set at $4,929.10, representing 90% of billed charges. *Id.* ¶ 45. By disregarding the PMCS vendor contract and using a Medicare-based methodology instead, United reduced the allowed amount by almost $4,000, increasing Plaintiff Davis's responsibility by more than $1,500. *Id.* ¶¶ 42-45.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

- Plaintiff Koohns received "staged" spine surgery for which Dr. Schwaegler billed a total of $40,327.50, his assistant surgeon billed $7,578.15, and SSI billed a total of $303,873.81. *Id.* ¶¶ 73-77; *see also id.* ¶¶ 58-72 (alleging use of Medicare rates instead of negotiated rate in determining allowed amounts for Koohns's office visits to SSI). By disregarding both the MultiPlan and PMCS vendor contracts, and using a Medicare-based methodology, United reduced the allowed amount by around $300,000, while increasing Plaintiff Koohns's responsibility by about that much. *Id.* ¶¶ 78-79.

- Plaintiff Lockhart received back surgery for which SCV billed a total of $305,964.00. *Id.* ¶¶ 91-97. United disregarded SCV's vendor contract with MultiPlan, and instead applied a proprietary reimbursement methodology by Data iSight, a MultiPlan subsidiary that United uses to "reprice" claims. By using Data iSight, United reduced the reimbursement by a significant amount. *Id.* ¶¶ 91-104. Lockhart was left responsible for 98% of the claim charges, almost $300,000. *Id.* ¶ 112.

Instead of reasonably applying the actual written terms of the Vendor Contract Plans, United developed and applied its own internal policy (the "United Internal ONET Policy"), which contradicted those Plan terms. *Id.* ¶¶ 114-18. Under the United Internal ONET Policy, which is not part of the Vendor Contract Plans, United purported to "reserve[] the right"—unless "prohibited by law"—to cause ***any*** of the plans it administers "to pay the lesser of the amount in your third-party network vendor contract or an amount consistent with United's benchmark standards." *Id.* ¶ 117.

PLS.' OPP'N TO MOT.
TO DISMISS FAC – 8

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

United developed the United Internal ONET Policy and misinterpreted the Vendor Contract Plans in order to serve United's own economic self-interest. *Id.* ¶ 119. Drawing on testimony from United's own witnesses at a recent trial in Nevada,[2] Plaintiffs allege here that United's actions stemmed from a program it undertook in 2016 to increase the fees it received from Plaintiffs' Plans for "savings" United generated—a fee calculated as a percentage of the difference between the providers' billed charge and the amount paid by the Plan. By misinterpreting the Plans' written terms as it did, United increased the gap between billed charges and paid amounts—and thus increased the value of United's fee. *Id.* ¶¶ 120-26. Plaintiffs allege that by engaging in the aforementioned conduct, United violated the terms of the Vendor Contract Plans and breached its fiduciary duties under ERISA. *Id.*

**ARGUMENT**

## I.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). The Court must accept as true all well-pled factual allegations and must construe them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). The complaint need not contain detailed factual allegations, merely "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows

---

[2] In that case, United was found liable and was ordered to pay $60 million in punitive damages for using this strategy to underpay for emergency room services offered by a Nevada-based company. *Fremont Emergency Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. A-19-792978-B (Clark Cty. Dist. Ct.).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

ERISA's statutory scheme "is built around reliance on the face of written plan documents." *Kennedy*, 555 U.S. at 301; *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995) ("[T]he goal of ERISA [is] to ensure that an employee's rights and obligations can be readily ascertained from the plan documents."). Plan documents like the Vendor Contract Plans here must be "written in a manner calculated to be understood by the average plan participant." *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 74, 83-84 (1995) (quoting 29 U.S.C. § 1022(a)(1)); *see also Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002) (courts "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience").

A "contract must be interpreted as a whole such that every term in the contract is given effect and force." *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1011 (W.D. Wash. 2004). As a result, "[i]nterpretations that contradict and thereby nullify clauses within the contract are disfavored," as are "interpretations that would result in a term being superfluous or duplicative[.]" *Id.* at 1011-12. A fiduciary administrator's interpretation of an ERISA plan that conflicts with the plain language of the plan is inherently unreasonable. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996). Moreover, a claims administrator like United here cannot promulgate and apply a separate internal policy or guideline that conflicts with the terms of the actual plan documents. *E.g.*, *Egert*, 900 F.2d at 1036; *Smith v. Health Servs. of Coshocton*, 314 F. App'x 848, 859 (6th Cir. 2009) ("A plan administrator can rely on internal rules or policies in construing the terms of an employee benefits plan *only if* these rules or policies reasonably interpret the plan.") (emphasis added);

PLS.' OPP'N TO MOT.
TO DISMISS FAC – 10

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Prolow v. Aetna Life Ins. Co.*, No. 20-80545-CIV-MARRA, 2022 WL 263165, at *14 (S.D. Fla. Jan 27, 2022) (quoting *Egert*); *White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*, No. C 10–1855 BZ, 2011 WL 2531193, at *5 (N.D. Cal. June 24, 2011) ("Courts in this District have previously held that insurer defendants in ERISA actions cannot deny claims based on standards that are not contained in the policy.").

## II.   PLAINTIFFS HAVE PLAUSIBLY ALLEGED THAT UNITED'S INTERPRETATION OF THE VENDOR CONTRACT PLANS WAS UNREASONABLE.

Plaintiffs advance an interpretation of the Vendor Contract Plans that is consistent with the plain meaning of the Plan terms themselves, and with ERISA. By contrast, United's interpretation conflicts with the relevant Plan terms and ERISA.

### A.   Plaintiffs Plausibly Allege a Reasonable Interpretation of the ONET Reimbursement Provision.

Plaintiffs' interpretation is supported by the plain language of the Plan documents. As noted above, the provision for reimbursement of ONET claims in the Vendor Contract Plans provides that reimbursement may be determined by "either" of two approaches. The first approach listed is the "[n]egotiated rate" agreed to by United or one of its vendors. United does not dispute that the FAC adequately alleges that, as to Plaintiffs' Plans, United's vendors entered contracts with Plaintiffs' providers that included negotiated rates. The second approach applies only conditionally: ***"[i]f*** rates have not been negotiated." When that condition is satisfied—that is, ***only*** when there is no negotiated vendor contract rate—then United may select one of the other methodologies according to the decision-chain set out under that bullet. Plaintiffs plausibly allege that, because there ***were*** negotiated rates that United had agreed to, the condition to using one of

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

the alternative methodologies was **not** satisfied. FAC ¶¶ 2, 8, 44-53, 79-81, 98, 102-04, 108, 111-13, 118, 139-40.

The other plain terms of the ONET Reimbursement Provision also support Plaintiff's reading of the Plans. After the opening sentence that states that the allowed amount will be determined by "either of the following," the Vendor Contract Plans set out a two-part, "if/then" decision-making hierarchy. The first option states that when there is a "negotiated rate," that must be used and there is no need to proceed to the second option. The second option applies only "[i]f rates have not been negotiated." *Id.* ¶¶ 30, 57, 89.

**B.    United's Interpretation of the ONET Reimbursement Provision Is Inconsistent with the Plain Language of That Written Term.**

United's discourse on logic to support its tortured interpretation (Mot. 11-14) depends upon ignoring the "either/or" framework expressly set out in the first sentence of the ONET Reimbursement Provision and the conditional phrase that—to any ordinary reader—communicates that an alternate methodology will only be applied "if rates have not been negotiated." United's interpretation is unreasonable because, contrary to the language of the written plan term, United's interpretation treats **all** of the options—vendor contract rate, Medicare rate, "gap methodology," etc.—as an undifferentiated menu of equal-priority options from which United can pick whichever one it wants. If that were the case, then the actual language of the ONET Reimbursement Provision would make no sense: the word "either," followed by **two** options, would have no meaning; and the phrase "if rates have not been negotiated" would be entirely superfluous. The only reasonable way to show the options consistent with United's view

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

would be to present a list of options, without any conditional clauses limiting the circumstances for any of the options.[3] The ONET Reimbursement Provision is not such a provision.

Following United's "logic" through the rest of the ONET Reimbursement Provision underscores its absurdity. In the MS&G Plan, for example, there are at least three other conditional clauses in the ONET Reimbursement Provision that, by any natural read, set out a decision-making flow chart for determining the ONET reimbursement allowed amount:

- *If* vendor contract rates "have not been negotiated," *then* "Allowed Amounts are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services ["CMS"]."

- "*When a rate is not published by CMS for the service*, we use an available gap methodology to determine a rate for the service as follows."

- As to laboratory services, "*[w]hen a rate . . . is not published by CMS . . . and a gap methodology does not apply to the service*, the rate is based on the average amount negotiated with similar Network providers for the same or similar service."

- "*When a rate for all other services is not published by CMS for the service and a gap methodology does not apply to the service*, the Allowed Amount is based on 20% of the provider's billed charge."

---

[3] Indeed, in contrast to the hierarchical decision-making chain in the ONET Reimbursement Provision, the Vendor Contract Plans also contain non-hierarchical, "any of the following"-type lists, demonstrating that plan sponsors know how to create such lists when they want to. *E.g.*, Target Plan at 28-29 (describing a qualifying Clinical Trial as one that "meets any of the following criteria in the bulleted list below") (ECF No. 30-1); MS&G Plan at 10 (stating that the plan will recognize as a "federally funded trial" a trial approved or funded by any one of a list of government agencies) (ECF No. 30-3), 67 ("We have the right to release records concerning health care services when any of the following apply . . .") (ECF No. 30-5); Jacobs Plan at 139 (services are "experimental or investigational" when United determines that "any of the following" three circumstances apply) (ECF No. 30-2).

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

MS&G Plan at 33 (ECF No. 30-3) (emphasis added).[4] Under United's illogical read, none of these conditional phrases means anything: United can choose the "next" methodology in the decision-making chain whenever it wants—even when the condition (no published rate, no applicable gap methodology) is **not** satisfied.[5] United's interpretation fails to give "effect and force" to some terms and renders others a nullity. *See Cutter & Buck*, 306 F. Supp. 2d at 1011-12.

One final point: United appears to argue that, in the Target and Jacobs Plans (but not the MS&G Plan), the phrase "at UnitedHealthcare's discretion" in the ONET Reimbursement Provision somehow gives United the right to reject the negotiated vendor contract rate as it did here. Mot. 6.[6] That interpretation is also unreasonable. The only way to read this clause, without rendering other plan terms incomprehensible, is that it grants United discretion about whether or not to enter into contracts with vendors, or which negotiated rate to apply if more than one such contract is potentially applicable (e.g., the provider has a contract with PMCS and MultiPlan, such as with SSI, the provider for Plaintiffs Davis and Koohns). Were it otherwise, then the conditional phrase of the second, fallback option would not make sense—because if "rates have [] been

---

[4] The ONET Reimbursement Provision in the Jacobs Plan contains two conditional clauses in addition to "If rates have not been negotiated." ECF No. 30-2 at 10-11. The ONET Reimbursement Provision in the Target Plan contains three conditional clauses in addition to "If rates have not been negotiated." ECF No. 30-1 at 7-8.

[5] Applying United's presentation style (*see* Mot. 12):

Actual Plan Language: "***If rates have not been*** negotiated, then one of the following amounts."
United's Position: "***Even if rates have been*** negotiated, then one of the following amounts."

[6] The MS&G Plan of Plaintiff Koohns lacks this phrase. FAC ¶ 57.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

negotiated," but United, in its supposedly unlimited discretion, has decided to reject them, what rate would apply then? The Vendor Contract Plans would provide no answer.[7]

**C.      United's Interpretation of Vendor Contract Plans Is Unreasonable Because It Depends on Irrelevant Plan Terms and Is Inconsistent with Its ERISA Fiduciary Duties.**

United attempts to find support in the definition of the "Shared Savings Program," which is only two of the three Vendor Contract Plans of the named Plaintiffs. Mot. 4. But those definitions are irrelevant. The ONET Reimbursement Provision, which Plaintiffs allege that United unreasonably interpreted, ***does not mention or refer to*** the Shared Savings Program. Similarly, the Shared Savings Program definition ***does not mention or refer to*** the ONET Reimbursement Provision (or "Eligible Expenses" or "Allowed Amount"). Thus, those definitions are simply irrelevant to determining what the allowed amount should be under the relevant term in a Vendor Contract Plan. United offers no caselaw or principal of contract interpretation to support its claim that this unmentioned, unreferenced term can radically alter the meaning of the ONET Reimbursement Provision. In fact, the ONET Reimbursement Provision— a specific provision that unambiguously explains how the Plan sponsor has agreed that Eligible Expenses are determined when covered services are received from an ONET provider—must control over the nebulous, general Shared Savings definition. *See, e.g.*, *S. Cal. Gas Co. v. City of*

---

[7] United may contend that, in such a situation, United has the authority to choose a reimbursement methodology other than those set out in the Vendor Contract Plans. However, an interpretation that relies upon an undisclosed, secret method would be inherently unreasonable and would violate ERISA's plan document rule. *See Kennedy*, 555 U.S. at 300-01.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

*Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003) (per curiam) (specific terms of a contract govern inconsistent, more general terms).[8]

United's suggestion that its interpretation of the Vendor Contract Plans is consistent with its fiduciary duties (*e.g.*, Mot. 1, 3, 9-10) betrays a profound misunderstanding of the obligations imposed by ERISA. On the first page of its brief, United declares that Plaintiffs' position "flouts United's fiduciary duty to preserve Plan assets for the benefit of *all* participants, not just the few," revealing its view that "preserving plan assets" is its primary purpose. Not only is this inconsistent with Plaintiffs' allegations that United was seeking to maximize its own profits, not to protect the plans (FAC ¶¶ 2-3, 10-15, 71-72, 86, 113, 114-126), United's statement also flatly misstates what ERISA requires of a fiduciary. Section 1104 says nothing about limiting benefit payments to save money for a plan. Rather, § 1104(a)(1)(A)(ii), on which United relies (Mot. 2, 16), required United to keep **administrative expenses** down, not benefit payments. And § 1104 makes clear that **benefits** and **administrative expenses** are two very different things: an ERISA fiduciary like United must act "solely in the interest of [plan] participants and beneficiaries" by "providing benefits" (§ 1104(a)(1)(A)(i)) and "defraying reasonable expenses of administering the plan" (§ 1104(a)(1)(A)(ii)). Under ERISA, United's duty is to use any discretion it is granted by the plan to minimize the plan's **administrative** costs, while maximizing the interests of plan members

---

[8] And even assuming *arguendo* that there were circumstances where United could disregard the negotiated vendor contract rate in the Vendor Contract Plan in favor of another rate under the Shared Savings Program, United could not do so without violating its ERISA fiduciary duties when, as alleged in the FAC, its decision to use another rate was influenced by its own economic self-interest. *E.g.*, FAC ¶¶ 114-26.

PLS.' OPP'N TO MOT.
TO DISMISS FAC – 16

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

in obtaining benefits. United's troubling misunderstanding of ERISA only further demonstrates the plausibility of Plaintiffs' allegations.

Here, the FAC alleges that United adopted its strategy of misreading the Vendor Contract Plans *for its own economic self-interest*, not out of any concern for the Plans' assets. FAC ¶¶ 2-3, 10-15, 71-72, 86, 113, 114-26.[9] And indeed, because by rejecting the vendor contract rates United exposed Plaintiffs to balance-billing risks that would not exist if United applied the vendor contract rate as required by the Vendor Contract Plans, Plaintiffs have plausibly alleged that United acted *contrary* to the interests of the Plan members, in direct violation of their ERISA fiduciary obligations imposed under 29 U.S.C. § 1104. *See, e.g.*, *id.* ¶¶ 9, 14, 34, 81, 93, 125. At this stage, the Court must reject United's explanation and must accept Plaintiffs' factual allegations about United's self-interested approach to reimbursing Plaintiffs' claims—allegations that United does not dispute are well-pleaded.

**D.**    **United Improperly Relies on an Internal Policy That Is Inconsistent with the Written Terms of the Vendor Contract Plans and Violates United's Fiduciary Duties.**

Finally, United points to the United Internal ONET Policy—which Plaintiffs allege is a self-serving document that United internally created that is not a plan document and, in fact, contradicts the Plans' written terms (FAC ¶¶ 116-19)—as the source of its authority to choose

---

[9] United essentially contends that it is not breaching its fiduciary duty if it puts the financial interest of the plan as a whole over that of the insureds, but this ignores the fact that Plaintiffs' employers (the plan sponsors) promised to pay benefits consistent with the ONET Reimbursement Provision, so they already determined that it is in their interest to reimburse ONET providers at the vendor contract rate.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

whatever reimbursement approach it wants. Mot. 1, 6.[10] It is blackletter ERISA law that a fiduciary's internal policy cannot trump written plan terms and ERISA's fiduciary duties. FAC ¶¶ 116-119. *See, e.g.*, *Egert*, 900 F.2d at 1036; *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 240-41 (D. Conn. 2018) (denying summary judgment to defendant where plaintiff introduced evidence that insurer relied on separate, internal criteria to determine if treatment was experimental, and finding that "no person of average intelligence and experience would interpret" the plan terms as consistent with the internal criteria, and that the internal criteria had "no basis in the text" of the plans); *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 WL 1033730, at *22 (N.D. Cal. Mar. 5, 2019) (concluding that guidelines developed internally by claims administrator were not plan terms, but were instead United's unreasonable interpretation of plan terms); *cf. Kennedy*, 555 U.S. at 301 (plan administrator must dispense benefits as required by written terms of the ERISA plan, not other documents).[11] Far from being exculpatory, the United Internal ONET Policy is actually proof that United is breaching its fiduciary duties by adopting a policy purporting to allow it to ignore the clear and unambiguous terms of the plans it administers, including Vendor Contract Plans. Finally, the United Internal ONET Policy's statement that it does not apply where "prohibited by law" bars United from using it here, where Plaintiffs have alleged that doing so would violate United's fiduciary duties under ERISA.

---

[10] By stating that "the Plans . . . vest United with . . . '***the right to pay the lesser of the amount***'" of certain rates (Mot. 1), United misleadingly suggests that the bolded, italicized phrase comes from a Plan. In fact, the quote comes from the United Internal ONET Policy, not any Plan document.

[11] Here, the United Internal ONET Policy refers to United's "benchmark standards," a term that not only does not appear in any of Plaintiffs' Plans, but is not even defined in the Internal ONET Policy itself.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

### III.   PLAINTIFFS PLAUSIBLY PLEAD FACTS TO SUPPORT THEIR CLAIMS UNDER § 502(a)(3).

United contends that Plaintiffs have failed to plausibly state a claim for breach of fiduciary duty. Mot. 13-14, 16. But United simply ignores Plaintiffs' extensive allegations that expressly describe and explain United's breaches. *See* FAC ¶¶ 2-3, 10-15, 71-72, 86, 113-126. United does not dispute that these allegations are plausible. Rather, United asserts only that "United honored the terms of the Plans in calculating Eligible Expenses for Plaintiffs' claims." Mot. 13. But Plaintiffs have alleged the opposite, supported by 126 paragraphs of plausible factual allegations. *See generally* FAC. On a motion to dismiss, United loses because the Court must resolve all factual disputes in Plaintiffs' favor.

United's related argument—that Plaintiffs' entire legal theory boils down to the contention that United violated its fiduciary duties by not selecting the reimbursement method "that resulted in the highest reimbursement" (Mot. 16)—is equally misplaced. As set out exhaustively in the FAC, Plaintiffs allege that United violated its fiduciary duties imposed by ERISA (29 U.S.C. § 1104) by, inter alia, interpreting and applying written plan terms in a manner that is inconsistent with those plan terms; pursuant to a purposeful strategy of disregarding vendor contract rates in order to reimburse at lower rates and thus to reap increased fees for itself; and in so doing, exposed plan members to balance-billing risks that would not exist if the vendor contracts were applied. *E.g.*, FAC ¶¶ 10-15, 86, 113-126. The allegation is not that United must always select the highest reimbursement rate possible regardless of any other consideration; rather, the allegation is that United must reasonably interpret the Plans' written terms when making benefit determinations and otherwise comply with its ERISA fiduciary duties. As alleged, it failed to do so.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

**A.    Controlling Ninth Circuit Authority Compels Denial of United's Motion to Dismiss Plaintiffs' Non-Duplicative § 502(a)(3) Claims.**

Given United's position that Plaintiffs cannot state a claim for a breach of ERISA's statutory fiduciary duties under § 502(a)(1)(B) (Mot. 13-14), and Plaintiffs' extensive plausible allegations that United's alleged fiduciary breaches injured Plaintiffs beyond just the denial of benefits (*see* FAC ¶¶ 14, 46, 80, 109, 112-113, 125), United's challenge to the sufficiency of Plaintiffs' § 502(a)(3) claims is groundless.

Counts II and III seek relief under 502(a)(3) only in the alternative, "to the extent that" full relief to remedy Plaintiffs' injuries is not available under § 502(a)(1)(B). Thus, they are by definition non-duplicative of Count I. Section 502(a)(3)(A) permits an action "to enjoin any act or practice which violates [ERISA] or the terms of the plan," while § 502(a)(3)(B) provides for "other appropriate equitable relief" to redress a violation of ERISA or plan term, or to enforce any provision of ERISA or plan term. 29 U.S.C. § 1132(a)(3). United does not argue that Plaintiffs failed to plausibly allege the essential element of this claim (i.e., an act or practice that violates ERISA or the Plans' written terms). Instead, United seeks to dismiss the § 502(a)(3) claims based solely on its assertion that Plaintiffs' § 502(a)(1)(B) claims—which United also seeks to dismiss—can fully remedy Plaintiffs' injuries. *See* Mot. 14-16.

United's argument conflicts directly with controlling Ninth Circuity authority. In *Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948, 961 (9th Cir. 2016), the Court of Appeals held that "§ 1132(a)(1)(B) and § 1132(a)(3) claims may proceed simultaneously so long as there is no double recovery." The Court found cases concluding otherwise to be "clearly irreconcilable" with *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), and held that such earlier decisions "are no longer binding." *Id.* at 962. *See also Silva v. Metro. Life Ins. Co.*, 762 F.3d 711,

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

726 (8th Cir. 2014) ("*Varity Corp.* did not deal with pleading but rather with relief . . . .") (quoting

*Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 902-03 (E.D. Wis. 2005)).

Relying on *Moyle*, courts in this Circuit regularly hold that alternative claims for relief

under § 502(a)(3) should not be dismissed at the pleading stage. *Poisson v. Aetna Life Ins. Co.*,

488 F. Supp. 3d 942, 948 (C.D. Cal. 2020) (denying motion to dismiss 502(a)(3) claim as

duplicative); *Hancock v. Aetna Life Ins. Co.*, 251 F. Supp. 3d 1363, 1370 (W.D. Wash. 2017)

("even at the summary judgment stage, a plaintiff may proceed with simultaneous claims under

Sections 1132(a)(1)(B) and (a)(3)"). As the court stated in *Cherry v. Prudential Insurance Co. of*

*America*, No. C21-27 MJP, 2021 WL 2662183, at *2 (W.D. Wash. June 29, 2021), in granting a

motion to compel discovery on a § 502(a)(3) claim: "Pleading multiple causes of action and

alternative theories of liability is a standard practice of civil litigation. *See* F.R.C.P. Rule 8(a)(3).

And it is permissible under ERISA."[12]

### B.   Plaintiffs May Seek All Relief Available under § 502(a)(3).

Finally, United contends that Plaintiffs lack standing to seek injunctive relief. Mot. 17-18.

---

[12] The main cases on which United relies pre-date *Moyle*, and are inapposite anyway. Unlike *Nielsen v. Unum Life Insurance Co. of America*, 58 F. Supp. 3d 1152, 1165-66 (W.D. Wash. 2014), Plaintiffs here have alleged a "systemic breach of fiduciary obligations" and have responded to defendant's argument about the fiduciary breach claim. *Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1238 (W.D. Wash. 2013), involved a motion for summary judgment, not a motion to dismiss; and again, the plaintiff there did not respond to the defendants' argument. And United cites *Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-cv-624-SI, 2020 WL 5834786, at *6 (D. Or. Sept. 30, 2020) (dismissing § 502(a)(3) claim that failed to alleged a violation of ERISA or plan terms), but fails to disclose that in the same case, the court subsequently denied Cigna's motion to dismiss plaintiff's amended complaint and allowed the plaintiff's § 502(a)(1)(B) and § 502(a)(3) claims to simultaneously go forward. *Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-cv-624-SI, 2021 WL 1895234, at *2 (D. Or. May 11, 2021).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

United is wrong, especially at the pleading stage. Plaintiffs have alleged that they are still members or participants in their Vendor Contract Plans. FAC ¶¶ 16-18, 28, 56, 87. Thus, it is entirely plausible that in the future Plaintiffs will receive out-of-network care and submit claims for benefits covered by the vendor contract rate. Accordingly, it is entirely proper to seek forward looking injunctive relief that requires United to reasonably interpret the plain terms of their Plans and to stop violating its fiduciary duties. *See, e.g.*, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2020 WL 6479273, at *43 (N.D. Cal. Nov. 3, 2020) (rejecting argument that plaintiffs were not entitled to injunctive relief where defendant stipulated that certain named plaintiffs were still covered by its plans). United's position is particularly striking given that it requires ignoring the express provisions in ERISA itself which provide that ERISA participants or beneficiaries, like Plaintiffs, may sue "to clarify [their] rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and "to enjoin any act or practice which violates [ERISA] or the terms of the plan," 29 U.S.C. § 1132(a)(3)(A). United's position that Plaintiffs cannot seek to address future actions is therefore belied by ERISA itself.

## CONCLUSION

For the foregoing reasons, the Court should deny United's motion to dismiss.

DATED: February 22, 2022

By: */s/ Andrew N. Goldfarb*
Eleanor Hamburger (WSBA #26478)
**SIRIANNI YOUTZ**
**SPOONEMORE HAMBURGER PLLC**
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Fax (206) 223-0246
ehamburger@sylaw.com

PLS.' OPP'N TO MOT.
TO DISMISS FAC – 22

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

D. Brian Hufford, Esq. (*pro hac vice*)
Jason S. Cowart, Esq. (*pro hac vice*)
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com

Andrew N. Goldfarb, Esq. (*pro hac vice*)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
agoldfarb@zuckerman.com

Jeffrey L. Greyber, Esq. (*pro hac vice*)
**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd., Suite 310W
Boca Raton, FL 33431
Tel. (561) 405-7966
jgreyber@callagylaw.com

Meiram Bendat, Esq. (*pro hac vice*)
**PSYCH-APPEAL, INC.**
7 West Figueroa Street, Suite 300
Santa Barbara, CA 93101
Tel. (310) 598-3690, ext. 101
mbendat@psych-appeal.com

*Counsel for Plaintiffs and the Putative Class*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246